James E. MILLER, Relator,

v.

INTERNATIONAL EXPRESS CORP.,
Commissioner of Jobs and
Training, Respondents.

No. C4–92–1867.

Court of Appeals of Minnesota.

Feb. 16, 1993.

James E. Miller, pro se.

International Exp. Corp., Minneapolis.

Kent E. Todd, Dept. of Jobs & Training,
St. Paul, for Com'r of Jobs and Training.

Considered and decided by PARKER,
P.J., and FORSBERG and KALITOWSKI,
JJ.

## OPINION

PARKER, Judge.

A representative of respondent Commissioner of Jobs and Training concluded that relator James Miller was disqualified from receiving unemployment compensation because he had voluntarily quit his job without good cause attributable to his employer, respondent International Express Corporation. Miller appeals by certiorari, claiming he had good cause to quit because International Express violated minimum wage laws. We reverse and remand.

## FACTS

International Express Corporation hired James Miller as a part-time relief driver in May 1991. On January 20, 1992, Miller resigned from International Express and applied to the Department of Jobs and Training for unemployment compensation. Miller informed the Department that he quit because his job had been changed. Miller also stated that his new job did not have a guaranteed minimum rate of pay.

A Department representative denied Miller's application for benefits, and Miller appealed. In his letter of appeal, Miller claimed that he had good cause to quit because his prior position had been eliminated and because he would have been required to work more hours with no minimum guarantee of wages.

A Department referee conducted a hearing, and Miller appeared and testified. The evidence indicated that, at the time Miller was hired, International Express owned a towncar service and an airport shuttle service. Towncar drivers were paid approximately $7 per hour, but airport van drivers were paid from a pool, which was determined by the number of van drivers and the number of passengers per day. Miller testified that shortly after he was hired, he was assigned to drive the towncars four days per week, and he also drove the airport shuttle vans on Sundays.

On January 20, 1992, International Express sold the towncar service. Miller refused to be reassigned to the airport shuttle service because he believed he would have to accept a reduction in pay and hours. In support of his claim, Miller introduced into evidence a handwritten list of all of the pool shares from November 29 through January 23.

Following the hearing, the referee issued a decision affirming the denial of benefits. Miller appealed to a Commissioner's representative, who remanded for a new hearing to allow International Express to present evidence.

At the second hearing, International Express was represented by its general manager, Mark Ryan. Ryan testified that, under the terms of Miller's employment, he could be assigned either to the towncar service or to the airport shuttle service. Ryan admitted that, other than on holidays, the airport shuttle drivers were not guaranteed any minimum wage.

Miller testified that the airport shuttle pool shares were often below minimum wage. Miller also testified that, at the time he quit, he informed International Express that he would not work for such low wages. Miller testified that he believed International Express had violated the Fair Labor Standards Act by paying him on a commission basis; however, he did not file a grievance with his union prior to quitting.

Following the second hearing, the referee issued a decision affirming the denial of unemployment compensation on the basis that Miller had voluntarily quit his job without good cause attributable to International Express.

Miller appealed the referee's decision to a Commissioner's representative, who affirmed. The Commissioner's representative found that when Miller was hired, he was not guaranteed any specific driving duties or levels of pay. The Commissioner's representative also found that, before he quit, Miller did not file a union grievance or complain to his employer that he believed the pool share arrangement for airport shuttle drivers was in violation of the Fair Labor Standards Act. The Commissioner's representative did not address Miller's claim that the pool share arrangement violated minimum wage laws.

## ISSUES

I. Did the Commissioner's representative err by failing to address Miller's claim that he had good cause to quit due to his employer's violation of minimum wage laws?

II. Was the denial of Miller's application for unemployment compensation erroneous because the denial was based upon procedural irregularities?

## DISCUSSION

### I

It is undisputed that Miller voluntarily quit his job with International Express.

An individual who voluntarily quits a job "without good cause attributable to the employer" is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(a) (1990). The employee has the burden of proving, by a preponderance of the evidence, that he had good cause to quit. *Marz v. Department of Employment Servs.*, 256 N.W.2d 287, 289 (Minn.1977).

On appeal, we will defer to the Commissioner's findings of fact and will affirm those findings if there is evidence in the record reasonably tending to sustain them. *Markel v. City of Circle Pines*, 479 N.W.2d 382, 383–84 (Minn.1992). Ultimately, however, whether an employee had good cause to quit is a question of law "which is not binding on this court if it does not have reasonable support in the findings." *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978).

▪ An employee has good cause to quit voluntarily if the employer refuses to pay a statutorily mandated wage. *See Mitchell v. Crookston Welding Mach. Co.*, 492 N.W.2d 256, 257 (Minn.App.1992). Drivers for an airport shuttle service are engaged in interstate commerce and are entitled to receive the minimum wage. *Bingham v. Airport Limousine Serv.*, 314 F.Supp. 565, 568 (D.C.Ark.1970).[1] Accordingly, if International Express violated the minimum-wage laws, such violation constituted good cause, per se, for Miller to quit.

International Express presented no evidence disputing Miller's claim that the pool share wages were below minimum wage. In fact, the general manager of International Express, Mark Ryan, admitted that the airport shuttle drivers were not guaranteed any minimum wage.

▪ We are troubled by the fact that although Miller raised a colorable claim of minimum-wage violations, the Commissioner's representative made no determination on this issue. We are particularly troubled by the Commissioner's representative's failure to address the minimum-wage claim in light of the fact that Miller appeared pro se at the referee hearings. The supreme court has cautioned referees to "be especially careful to insure fairness to all persons bringing grievances" before the Department. *Plowman v. Copeland, Buhl, & Co., Ltd.*, 261 N.W.2d 581, 584 (Minn. 1977). Particularly when parties are unrepresented by counsel, the referees and Commissioner's representatives have the obligation to recognize and interpret the parties' claims. We remind the Department referee and Commissioner's representatives that the unemployment compensation statutes are remedial and humanitarian in nature. *See Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384, 385 (Minn. 1980); *McCourtney v. Imprimis Technology, Inc.*, 465 N.W.2d 721, 724 (Minn.App. 1991).

▪ We therefore remand to the Commissioner's representative for a determination of whether International Express violated state and federal minimum-wage laws. On remand, the Commissioner's representative should also make specific factual findings on Miller's allegation that his new assignment to the airport shuttle service would have resulted in a substantial reduction in pay. *See Scott v. The Photo Ctr., Inc.*, 306 Minn. 535, 536, 235 N.W.2d 616, 617 (Minn.1975). Although an employer may have the right to transfer an employee and reduce his wages accordingly, the employee may still have good cause to resign as a result of a substantial reduction in wages.

II

Miller argues that the first referee should have ruled in Miller's favor when International Express failed to appear at the hearing. Miller, however, had the burden of proving that he had good cause to quit. *Marz*, 256 N.W.2d at 289. The referee could properly conclude that Miller had failed to meet his burden of proof, despite a lack of testimony by International Express.

---

1. Department of Labor and Industry rules provide that part-time employees (with certain exceptions that are not applicable here) may not be paid wages lower than the minimum wage. Minn.R. 5200.0050 (1991).

Miller also claims that his benefits should not have been denied initially, because International Express did not contest his application for benefits within seven days, as required by statute. *See* Minn.Stat. § 268.-10, subds. 1(d), 2(1) (1990).

The Commissioner has not responded to Miller's allegations of procedural error. In light of our decision to remand on whether Miller had good cause to quit, we also remand for a determination of whether International Express's untimely protest constituted a waiver of its challenge to the payment of benefits.

## DECISION

The Commissioner's representative erred by failing to consider whether International Express violated minimum wage laws and whether Miller had good cause to quit due to a substantial decrease in his wages. On remand the Commissioner's representative should also consider Miller's allegations of procedural irregularities.

Reversed and remanded.