[No. 44262-7-I.    Division One.    January 10, 2000.]

MICHAEL J. MARTINI, *Appellant*, v. THE EMPLOYMENT
SECURITY DEPARTMENT, ET AL., *Respondents*.

*Pamela Crone*; and *Patricia Arthur* of *Evergreen Legal Services*, for appellant.

*Daphne Jiling Huang*, for respondents.

BAKER, J — Michael J. Martini voluntarily quit his job as a driver with a transportation company whose compensation policies did not guarantee a minimum wage and violated the Washington Minimum Wage Act. Because the employer admittedly knew of the factual circumstances that gave rise to the violation, and because there was a nexus between the employer's illegal compensation policies and the employee's termination, Martini is entitled to unemployment benefits.

## I

Michael J. Martini was employed with Crew Shuttle Services (CSS) as a "long haul driver." In that position, Martini transported railroad work crews to jobsites and was paid for each mile he drove. He was also paid for some of the time he had to wait (wait time) for the arrival of work crews at the pickup point of any given trip, and for

work crew meal stops, cigarette breaks, and restroom stops en route. Because CSS had contractually agreed not to charge the railroads for the first 30 minutes of wait time on any given trip, CSS did not compensate Martini for the first 30 minutes of wait time. In addition, CSS did not compensate Martini for time spent cleaning, fueling, inspecting, and maintaining the vehicle, or for time spent waiting in traffic on any given trip.

When Martini started with CSS, he was paid $.15 per mile and $.09 for each "compensable minute" of wait time. Martini transferred to an hourly position with CSS, but later transferred back to a position as a long haul driver and was paid $.16 per mile and $.10 for each compensable minute of wait time.

Under the CSS compensation scheme for long haul drivers, Martini could earn up to $10.40 per hour, but only if the work crew was at the pickup point on time, if the drive from the pickup point to the destination point was at least one hour at a speed limit of 65 miles per hour, and if the drive did not entail traffic delay.[1] Martini could earn as little as $3.00 per hour if the work crew was not at the pickup point on time and did not arrive for at least an hour.[2] Martini was not guaranteed a minimum hourly wage.

Long haul drivers for CSS are required to have a pager so that they can be contacted while driving or while awaiting dispatch to pickup points. When Martini commenced employment with CSS, a CSS manager provided him with a pager and he was not required to pay for pager service. Although other CSS long haul drivers were apparently required to provide their own pager and to pay for pager

---

[1] $.16 per mile × 65 miles per hour (maximum allowable speed under Department of Transportation regulations).

[2] $.10 per minute × 30 minutes (60 minutes total wait time − 30 minutes uncompensated wait time). In theory, Martini might earn less than $3.00 per hour, e.g., $1.60 per hour if traffic were flowing at only 10 miles per hour because he was not paid for time spent waiting due to traffic delays. Washington's relevant minimum wage in effect at the time of Martini's employment was $4.90 per hour. RCW 49.46.020 (1993).

service, Martini did not know of this requirement when he began his employment with CSS. For an unknown reason, Martini's pager service was terminated after he was employed with CSS for over a year and a half. Martini asked his direct supervisor what had happened and was told that he would have to buy his own pager and to pay for his own pager service.

CSS never offered Martini alternative employment that did not require a pager, nor did CSS offer Martini a loan or other financial assistance to purchase a pager. Although Martini's supervisor offered to lend him a pager for a couple of weeks until he could buy one, borrowing her pager would have merely delayed Martini's inevitable obligation to pay for his own pager and pager service. He repeatedly asked his supervisor to request that CSS management authorize her to pay for the pager because this expenditure was a change in CSS policy and a personal financial hardship. She repeatedly declined.

After Martini was told for the fourth time that the company would not pay for a pager, he quit his job with CSS and applied for unemployment benefits. Martini stated that the main reason he quit was because CSS required him to pay for employment related expenses that were paid by CSS at the time he commenced employment. Martini was denied benefits. He appealed, contending that he had good cause to quit because CSS imposed a new condition of employment (the requirement that he pay for pager expenses) and because the CSS compensation scheme violated the Washington Minimum Wage Act.[3] The administrative hearing examiner upheld the denial of benefits and entered a conclusion of law that:

> Because the claimant did not leave work based on the employer's violation of the Washington State Minimum Wage Act, the undersigned need not address the issue of whether the employer's compensation structure represents a per se violation of the Washington State Minimum Wage Act.

---

[3] RCW 49.46.

The Commissioner of the Employment Security Department did not adopt that conclusion, but agreed with the administrative hearing examiner's denial of benefits and entered a finding of fact that:

> The claimant did not voluntarily leave his employment because of a belief that the employer's policy of not paying drivers for a thirty minute grace period or for any time spent providing maintenance to their vans was in violation of the Washington State Minimum Wage Act.

The superior court upheld the Commissioner's decision. Martini now appeals to this court.

## II

We review the decision of the superior court de novo, and apply the standards of the Administrative Procedure Act directly to the record before the agency.[4] We review factual determinations from a final administrative decision of the Commissioner under the "substantial evidence" standard.[5] Factual determinations must be supported by evidence that is substantial when viewed in light of the whole record before the court.[6] Legal determinations of the Commissioner are reviewed de novo.[7] However, we note that the Commissioner has authority to designate certain unemployment benefits decisions as precedents and to publish those precedents.[8] Such precedents are persuasive authority in this court.[9]

In general, unemployed workers are eligible for unemployment benefits unless they are statutorily disqual-

---

[4]*Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[5]*Terry v. Employment Sec. Dep't*, 82 Wn. App. 745, 748, 919 P.2d 111 (1996).

[6]*Id.* at 749.

[7]*Id.* at 748.

[8]RCW 50.32.095.

[9]*See* Ronald M. Levin, *Identifying Questions of Law in Administrative Law*, 74 Geo. L.J. 1, 56 (1985).

ified.[10] Under RCW 50.20.050, a worker may be disqualified from receiving unemployment benefits if he or she voluntarily leaves work without good cause. Martini argues that his employer's violation of the Washington Minimum Wage Act constitutes per se good cause to voluntarily leave work. In addressing an employee's per se good cause to voluntarily leave his or her employment due to an employer's violation of a statute, the Commissioner has set forth a general rule that:

> If unsuitable factors are found to exist concerning the job in question, the individual has, prior to quitting, a responsibility to do everything in his power to correct these conditions. One of the cardinal exceptions to this rule is a condition of employment which is illegal or contrary to public policy.[11]

The Commissioner in *In re Adams* addressed a situation where an employee voluntarily left his employment after he twice complained to his employer that he did not receive overtime compensation as required by the Washington Minimum Wage Act.[12] The Commissioner cited the general rule that a condition of employment which is illegal or contrary to public policy constitutes per se good cause to voluntarily leave work, but clarified that:

> even if the petitioner had not discussed with his employer his dissatisfaction concerning his failure to receive premium pay for overtime, the employment would be found as statutorily unsuitable, giving rise to good cause for quitting within RCW 50.20.050. This type of case is therefore removed from the rule . . . which holds that an employee must make a reasonable effort to resolve any problems with his employer prior to quitting, else good cause for leaving will not be found. . . . [However,] this exception to the rule . . . is applicable only where a clear statutory violation is established, and [only

---

[10]*Terry*, 82 Wn. App. at 749.

[11]*In re Conner*, No. 6-31, Dept. of Empl. Sec. Comm'r Dec. No. 759 (Aug. 23, 1968); *accord In re Pope*, No. 72-7186, Dept. of Empl. Sec. Comm'r Dec. No. 949 (Jan. 22, 1973).

[12]*In re Adams*, No. 7-01998, Dept. of Empl. Sec. Comm'r Dec. 2d No. 344 (Sept. 26, 1977).

where] the employer has knowledge of the factual circumstances which give rise to the violation.[13]

The Commissioner's approach in *Adams* is consistent with the decision of the Court of Appeals of Minnesota in *Miller v. International Express Corp.*[14] That case concerned a driver of an airport shuttle van that claimed to have quit his job because he was reassigned to a position that did not guarantee a minimum rate of pay and potentially subjected him to a violation of minimum wage laws.[15] The administrative hearing examiner denied the driver's application for unemployment benefits because he did not file a grievance with his union or complain to his employer about the allegedly illegal pay practices before he quit.[16] Thus, the administrative hearing examiner did not consider the employee's claim that the employer's pay practices violated minimum wage laws or whether the employee had good cause to quit due to reassignment to a position that potentially reduced his wages without a guarantee of a minimum wage.[17]

The *Miller* court noted that unemployment compensation statutes are remedial and humanitarian in nature.[18] The court also noted that the employer admitted its knowledge of factual circumstances that gave rise to a violation of the minimum wage laws, and that the employee had raised a colorable claim of a clear statutory violation which should have been considered by the administrative hearing examiner.[19] The court reversed and remanded the decision to deny benefits for a specific factual finding as to whether the employer had violated minimum wage laws, and held

---

[13] *Id.*

[14] 495 N.W.2d 616 (Minn. Ct. App. 1993).

[15] *Id.* at 617.

[16] *Id.*

[17] *Id.* at 617-19.

[18] *Id.* at 618.

[19] *Id.*

that an employee has good cause to quit voluntarily when an employer does not pay statutorily mandated wages.[20]

■ We are persuaded by the Commissioner's prior decisions and by the reasoning of the *Miller* court that an employer's statutory violation may constitute per se good cause to voluntarily leave work. We thus hold that an employee has per se good cause to voluntarily leave work where: (1) there exists a clear statutory violation; (2) the employer has knowledge of the factual circumstances which give rise to the violation; and (3) the employee can establish some nexus between the employer's policies that give rise to the violation and the employee's termination. A sufficient nexus may be established where the employee's stated reason for quitting is the employer's illegal policy. However, whether the employee claims the violation as the main reason he or she quit is not dispositive. The employee may not even be aware that the employer's policies violate a legal requirement. It is sufficient if those policies (e.g., compensation or safety) are reasonably related to the termination.

In this case, the Commissioner found that Martini was unpaid for at least 30 minutes of wait time on over 90 percent of his trips, and the hearing testimony established that Martini was not compensated in any way for time spent cleaning, fueling, inspecting, and maintaining the vehicle. CSS admitted that Martini was not guaranteed a minimum hourly wage. The facts of this case thus present a clear violation of the Washington Minimum Wage Act and an employer's knowledge of factual circumstances that gave rise to the violation.

We therefore examine whether Martini established the necessary nexus between the employer's policies that give rise to the violation and his termination. Martini's take-home pay varied between $600 and $700 per month. Although Martini did not specifically articulate a Washington Minimum Wage Act violation as the main reason for his

[20]*Id.* at 618-19.

termination, he clearly stated that his financial situation made it impossible for him to suffer the additional financial burden of the pager that CSS required. It does not matter whether that financial burden was the proverbial "straw that broke the camel's back" or whether Martini could have continued working under conditions that violated the Washington Minimum Wage Act (as he had done for a protracted period of time).[21] The inference of impecuniousness in this case is clear—the compensation policies of CSS violated the Washington Minimum Wage Act and were reasonably related to Martini's termination. Because of that nexus, Martini is entitled to benefits.

Although we hold that Martini is entitled to benefits, we remand for further consideration by the Commissioner as to Martini's eligibility for Commissioner-approved training, an issue that was not resolved by the administrative hearing officer. Because we have reversed the decision of the Commissioner, we grant Martini's request for attorney fees under RCW 50.32.160.

Reversed.

KENNEDY, C.J., and AGID, J., concur.