[No. 18976-7-III.   Division Three.   July 26, 2001.]

MIKE M. OKAMOTO, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*Mark E. Vovos*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Daphne J. Huang, Assistant*, for respondent.

KURTZ, C.J. — Mike Okamoto's employment with Deaconess Medical Center was terminated for violation of its drug policy. He was denied unemployment benefits based on misconduct. He was told that to purge the disqualification, he would need to earn five times his weekly unemployment benefit through "bona fide employment." After being self-employed for several months, Mr. Okamoto again applied for unemployment benefits. He was denied benefits because wages earned from self-employment do not constitute wages under the Employment Security Act. Mr. Okamoto appeals the superior court ruling that affirmed the Employment Security Department commissioner's decision, contending that (1) the court erred in denying his motion to supplement the record, (2) the wages earned through self-employment purged his disqualification, and (3) the Department should be equitably estopped from asserting noncompliance with the purging requirements when Mr. Okamoto relied upon information he received from the Department. We affirm.

## FACTS

Mike Okamoto was employed by Empire Health Services/ Deaconess Medical Center as a grounds keeper specialist

from September 1986 until December 1997. Mr. Okamoto violated his employer's drug policy and was discharged for misconduct. He applied for unemployment benefits and was denied based on his disqualifying conduct. He appealed and a hearing was held before an administrative law judge (ALJ) on March 16, 1998.

The ALJ found that Mr. Okamoto was separated from employment under disqualifying conditions under the misconduct provision of the Employment Security Act, former RCW 50.20.060 (1993), *amended by* LAWS OF 2000, ch. 2, § 13. Accordingly, benefits were denied from "December 21, 1997 and thereafter for five calendar weeks, and until the claimant has earned wages in bona fide employment equal to five times his or her weekly benefit amount." Clerk's Papers (Hrg. Mar. 16, 1998) at 63-64. The ALJ also denied benefits based upon the finding that Mr. Okamoto was not able to, available for, or actively seeking work during the weeks at issue.

In October 1998, Mr. Okamoto again applied for unemployment benefits and was denied because he had not reestablished eligibility for benefits. His prior disqualification under former RCW 50.20.060 could be purged only if he earned wages in bona fide work equal to five times his weekly benefit amount. Mr. Okamoto's denial notice explained that income he had earned in self-employment did not constitute wages for purposes of the Employment Security Act.

Mr. Okamoto appealed this decision in December 1998. The ALJ found that Mr. Okamoto was engaged in self-employment because (1) all of Mr. Okamoto's 1998 earnings were from self-employment, (2) Mr. Okamoto's business was a sole proprietorship, and (3) he did not have any employees. Thus, the ALJ concluded that Mr. Okamoto's wages earned from self-employment did not purge his disqualification. Accordingly, the ALJ affirmed the denial of benefits.

In February 1999, Mr. Okamoto appealed to the Commissioner of the Employment Security Department regarding

the March and December 1998 orders. The commissioner dismissed the petition for review of the March decision as untimely filed without good cause, under RCW 50.32.070 and RCW 50.32.075. Regarding the petition for review of the December decision, the commissioner found that self-employment is not "employment" for purposes of the Employment Security Act. Accordingly, the commissioner affirmed the denial of benefits because Mr. Okamoto had not met the requirements for purging disqualification imposed under former RCW 50.20.060.

Mr. Okamoto filed a petition for reconsideration of the commissioner's decisions. On March 19, 1999, the commissioner denied the petition. The Spokane County Superior Court affirmed the commissioner's decision.

Mr. Okamoto appeals.

## ANALYSIS

*Motion to Supplement the Record.* Mr. Okamoto contends that the court's denial of his motion to supplement the record with evidence from March 4, 1999 and April 14, 1999 hearings was manifestly unreasonable. At these two hearings, Mr. Okamoto presented evidence that the Employment Security Department's own booklet regarding unemployment benefits did not mention that wages earned from self-employment would not purge the disqualification.

Generally, judicial review of an agency action is confined to the agency record. RCW 34.05.558. The court may receive evidence which was not contained in the agency record only if it relates to the validity of the agency action at the time and is necessary in deciding issues regarding (1) the possibility of disqualifying those who took the agency action; (2) unlawfulness of the procedure; or (3) material facts in rule making, brief adjudication, or other proceedings not required to be decided on the agency record. RCW 34.05.562(1).

"The admission or refusal of evidence is largely within the discretion of the trial court and will not be

reversed on appeal absent a showing of a manifest abuse of discretion." *Lund v. Dep't of Ecology*, 93 Wn. App. 329, 334, 969 P.2d 1072 (1998) (citing *Riss v. Angel*, 80 Wn. App. 553, 562, 912 P.2d 1028 (1996), *aff'd*, 131 Wn.2d 612, 934 P.2d 669 (1997)). "A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984).

▮ Mr. Okamoto has not established that any of the RCW 34.05.562(1) grounds exist for the admission of new evidence by the superior court. The evidence that he sought to admit were the transcripts of two hearings regarding claims for benefits that are entirely separate from those at issue in this appeal. The March 4, 1999 hearing addressed Mr. Okamoto's benefits for the period from April 26, 1998, to October 21, 1998, and dealt with the issue of whether there was good cause for late-filed claims. The April 14, 1999 hearing addressed Mr. Okamoto's benefits from January 10, 1999, to April 1999, and dealt with whether he was actively seeking work. The commissioner's decisions appealed in this case concerned the denial of prior benefits. Thus, the decisions pursuant to the two 1999 hearings simply do not relate to the validity of the commissioner's decisions appealed in this case because the hearings were conducted *after* the commissioner rendered his decision in this case. Accordingly, the superior court did not abuse its discretion in declining to supplement the record because the transcripts in question were not before the commissioner. Therefore, they could not have formed the basis of any error of law on which the court could have reversed.

*Disqualification for Unemployment Benefits.* Mr. Okamoto contends he purged his disqualification for unemployment benefits by earning wages through his self-employment. He argues that his self-employment was not a sham.

▮ Our review is governed by chapter 34.05 RCW, the Administrative Procedure Act (APA). We review the findings and decision of the commissioner, not the underlying

ALJ order. RCW 34.05.464(4); *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 405-06, 858 P.2d 494 (1993). The commissioner's decision is a conclusion of law reviewed de novo. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 390, 687 P.2d 195 (1984). While we give deference to the agency's interpretation of its own regulations, this court has the ultimate responsibility to see the rules are applied consistently with the policy underlying the statute. *Id.* at 392.

■ Relief from an agency order will be granted only when an agency erroneously interpreted the law or the decision is not supported by substantial evidence. RCW 34.05.570(3). " 'Substantial evidence is "evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises".' " *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 607, 903 P.2d 433 (1995) (quoting *Nghiem v. State*, 73 Wn. App. 405, 412, 869 P.2d 1086 (1994)). The burden of proving that an agency action was invalid lies with the party challenging the action. RCW 50.32.150, RCW 34.05.570(1)(a).

The Employment Security Act was enacted to provide compensation to individuals who are involuntarily unemployed "through no fault of their own." RCW 50.01.010. In keeping with this policy, the statute provides that "[a]n individual shall be disqualified from benefits . . . [when] he or she has been discharged or suspended for misconduct connected with his or her work." RCW 50.20.060. Disqualification for misconduct lasts for at least five weeks after discharge and until the disqualification is purged by engaging in work and earning wages in the amount required by statute. Former RCW 50.20.060.

■■ To requalify for benefits following disqualification, the claimant must satisfy two prerequisites. First, the individual must *obtain work* and *earn wages* "equal to five times his or her benefit amount." Former RCW 50.20.060. Second, the individual must again show he or she has been separated from work involuntarily and through no fault of his own, and that he or she is able to, available for, and actively seeking work. RCW 50.01.010, RCW 50.20.010(3).

Mr. Okamoto misinterprets the law in arguing that he "obtained work" and "earned wages" equal to five times his benefit amount, as required by the former Employment Security Act. Former RCW 50.20.060; WAC 192-16-017(1)(b). RCW 50.04.320(2) states that "[f]or the purpose of payment of benefits, 'wages' means the remuneration paid by one or more employers to an individual for employment." As the superior court found, this definition contemplates a relationship between the parties where one pays remuneration to the other. It does not state that self-employment constitutes work for purposes of the Employment Security Act. Self-employment is not " 'employment' under the Act and no benefits will arise due to work performed while self-employed." *Fisher v. Employment Sec. Dep't*, 63 Wn. App. 770, 775, 822 P.2d 791 (1992).

In *Fisher*, Division One held that a person who quits work to enter self-employment is not eligible to receive unemployment benefits. *Id.* at 771. In *Fisher*, the court affirmed a judgment denying unemployment compensation benefits to a claimant who quit his job to be self-employed in the fishing business, but who, at the end of the fishing season, sought unemployment benefits. The court held that the claimant left work without good cause within the meaning of the statute (RCW 50.20.050), and that he did not leave work to "accept a bona fide offer of bona fide work" within the statute's exception. *Id.* at 776. The claimant contended that he was covered by the exception because "work" includes self-employment, and therefore quitting to pursue self-employment was not quitting without good cause. The court, however, reasoned that the phrase " 'to accept a bona fide offer of bona fide work' " implies the existence of an employment relationship between two persons. *Id.* at 776. Although *Fisher* arises in a different context, its interpretation of the Employment Security Act supports the commissioner's decision that self-employment does not purge the disqualification imposed under former RCW 50.20.060.

The State also cites two commissioners' decisions that

interpret the Employment Security Act. Although they are not binding on this court, they are valuable as persuasive authority. *Martini v. Employment Sec. Dep't*, 98 Wn. App. 791, 795, 990 P.2d 981 (2000). In *In re Davis*, No. 9-01915, Dep't of Empl. Sec. Comm'r at 2 (No. 578, Nov. 28, 1979), a commissioner for the Employment Security Department concluded that "[t]he word 'work' in the statute has never been interpreted to include 'self-employment.'" The commissioner notes that work "contemplates only an employer-employee relationship and does not include self-employment." *Id.* In *In re Lewis*, No. 8-14018, Dep't of Empl. Sec. Comm'r at 4 (No. 563, Oct. 12, 1979), the commissioner held that "work," as referenced in the provision disqualifying a claimant from benefits until she "has obtained *work* and earned wages of a certain amount," has never included self-employment.

Mr. Okamoto's income earned from self-employment did not constitute wages under the Employment Security Act. Therefore, he did not purge his disqualification and is not entitled to unemployment benefits.

*Equitable Estoppel.* Mr. Okamoto contends the Employment Security Department should be equitably estopped from asserting noncompliance with the purging requirements because the information he received from the Department never told him that self-employment would not purge his disqualification from benefits. He alleges that he was not informed of the need for an employer-employee relationship until more than a year after he first applied for benefits.

"Equitable estoppel is based on the principle that: 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.'" *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993) (quoting *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975)).

To establish equitable estoppel, a party must prove (1) an admission, statement, or act inconsistent with

a later claim; (2) reasonable reliance on the admission, statement, or act; and (3) injury to the relying party if the first party is allowed to contradict or repudiate the admission, statement, or act. *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998). "Each element must be proved by clear, cogent, and convincing evidence." *Id.* Because equitable estoppel against the government is not favored, the asserting party must also show that the doctrine is necessary to prevent a manifest injustice and that the exercise of government functions will not be impaired. *Id.; Kramarevcky*, 122 Wn.2d at 743.

When Mr. Okamoto was initially denied unemployment benefits due to his misconduct, he was told that benefits were denied for at least five weeks and until he obtained bona fide work and earned wages of not less than five times his suspended weekly benefit amount. He argues that he should have been told "earn wages" meant an employer-employee relationship. He claims that this lack of information qualifies as an inconsistent statement by the Department fulfilling the first element of equitable estoppel.

A review of the record shows that the Department never made a representation to Mr. Okamoto that self-employment income would purge his disqualification from benefits. It was Mr. Okamoto's misunderstanding of unemployment law which led him to believe he could collect unemployment after being self-employed. The Department did not make inconsistent statements. The first element of equitable estoppel is not met so we need not reach the other elements.

Affirm.

BROWN, J., concurs.

SCHULTHEIS, J. (concurring) — Although I am required to agree with the result reached by the majority, the allegations made by Mike Okamoto, if true, certainly indicate unfair conduct by the Employment Security Department. The "Rights and Responsibilities" booklet, on which Mr. Okamoto relied, was not included in the record on appeal

and I am not familiar with its contents. Presumably, it is written so that a layperson can understand the sum and substance included therein. If information contained in that booklet, which is distributed to those people who are seeking unemployment benefits, leads a claimant to reasonably believe that wages, for unemployment purposes, could potentially include wages earned from self-employment, the Department should be estopped from using case law and statutes not readily understandable and/or available to the average claimant in order to find to the contrary.

Particularly disturbing here was the fact that when Mr. Okamoto appeared for the December 30, 1998, hearing on the Department's denial of unemployment compensation, the exhibits that he had carefully prepared and delivered to the Office of Administrative Hearings were not included in the file given to the Administrative Law Judge (ALJ) to consider. Mr. Okamoto, appearing pro se, supplied the ALJ with what information he had brought with him to the hearing. That information was later copied for the file. However, Mr. Okamoto had to come back to the hearing office at 8 o'clock the next morning to bring other documentation that should have already been contained in the file. I can imagine that arriving for a hearing only to find that the exhibits were missing could unnerve even an experienced attorney. Perhaps this is the reason that Mr. Okamoto failed to ask the ALJ to read into the record the portions of the booklet on which the ALJ relied.

I concur in the result, but am deeply disturbed by the apparent misunderstanding, which was caused by the Department.

Review denied at 145 Wn.2d 1022 (2002).