# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PATHFINDER HOUSE ADULT FAMILY HOME; NANCY MEYER; TIMOTHY MEYER; and KERRI BROOKS, | ) ) ) ) | No. 72435-5-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | UNPUBLISHED FILED: November 24, 2014 |
| Respondent. | ) ) ) | |

Cox, J. — Pathfinder House Adult Family Home, Nancy Meyer, Tim Meyer, and Kerri Brooks (collectively "Pathfinder House") appeals the superior court's order on judicial review. The order affirms the Review Decision and Final Order of March 30, 2012 of the Department of Social and Health Services Board of Appeals. That review decision and final order reverses the initial decision of the administrative law judge and affirms the decisions of DSHS to issue its Summary Suspension, License Revocation, and Stop Placement Order Prohibiting Admissions regarding Pathfinder House Adult Family Home and to issue findings of neglect and abuse against the Meyers and Brooks individually. Because Pathfinder House fails in its burden to show that the review decision and final order is invalid, we affirm.

In 2005, Nancy Meyer obtained a license to operate Pathfinder House Adult Family Home in Bow, Washington. She lived in the home with her husband Tim Meyer and their adult son Tommy. Tommy has Down syndrome.

In February 2009, five developmentally disabled residents lived at the home, including one resident named Tyler. The residents lived in the basement, and the Meyers and Kerri Brooks, a caregiver at the home, lived upstairs.

On February 23, the incident at the center of this case took place. One resident came upstairs from the basement and told Brooks that something inappropriate was or had been going on downstairs between Tyler and Tommy. Specifically, Tyler had allegedly rubbed his private parts against Tommy either while they were dancing or under other circumstances, in a manner that could be described as "dry humping" or mock intercourse. The contact did not appear to involve any touching with the hands or any skin-to-skin contact.

Neither Tim Meyer nor Brooks reported this incident to DSHS's hotline, to anyone who worked either for DSHS or with the residents, or to law enforcement. Nancy Meyer, who had been out of town, learned of the incident when she returned on February 27. She did not report the incident to the DSHS hotline, to Adult Protective Services (APS), or to law enforcement at that time. Instead, she responded by keeping Tommy upstairs when Tyler was home and by scheduling an appointment for Tyler with a community mental health agency.

Following Tyler's appointment at the agency, a therapist reported the incident to APS, which forwarded the report to DSHS Residential Care Services. Law enforcement began an investigation, and Residential Care Services

conducted an adult family home licensing investigation. DSHS found violations of four adult family home licensing regulations as a result of its investigation.

On May 7, DSHS served Nancy Meyer with a Notice of Summary Suspension, License Revocation, and Stop Placement Order Prohibiting Admissions. Nancy Meyer requested an administrative hearing to contest the enforcement action.

Additionally, after reports of verbal abuse and neglect, DSHS's Resident and Client Protection Program began its own investigation of the individuals working at Pathfinder House Adult Family Home. On October 1, DSHS issued Notice of Preliminary Finding letters to Nancy Meyer, Tim Meyer, and Kerri Brooks based on this investigation. DSHS found that that each of them had neglected vulnerable adults, and it also found that Brooks had abused vulnerable adults. They each requested an administrative hearing to contest DSHS's findings against them.

An ALJ consolidated the enforcement matter with the three resident and client protection matters. These consolidated matters were heard over the course of nine days in 2010. In the Initial Order dated February 4, 2011, the ALJ reversed the revocation of the adult home license and also overturned the findings of neglect and abuse.

DSHS petitioned for review of the initial order. Pathfinder House did not seek cross-review. The Board of Appeals review judge reversed the initial order in the review decision and final order. The review judge affirmed the revocation of the adult home license and reinstated the findings of abuse and neglect.

Pathfinder House petitioned for review by the superior court. The superior court affirmed the review decision and final order.

Pathfinder House appeals.

## SCOPE OF REVIEW

As an initial matter, DSHS argues that this court should disregard most of Pathfinder House's assignments of error. Because Pathfinder House failed to raise in the trial court most of the 190 assignments of error it makes in this appeal, we limit our review to assignments of error 180 to 190. We decline to address the other assignments.

Under RAP 2.5(a), an "appellate court may refuse to review any claim of error which was not raised in the trial court," subject to certain limited exceptions that do not apply here. "The rule reflects a policy of encouraging the efficient use of judicial resources."[1] It provides an opportunity to the lower tribunal to correct errors and avoid an appeal.[2]

Here, the superior court expressly determined that, while findings of fact 60 and 61 of the review decision and final order were implicitly challenged, "No other findings were challenged."[3] Our review of the record confirms that determination.

Here, only assignments of error 180 to 190 in Pathfinder House's opening brief in this appeal relate to findings of fact 60 and 61 of the review decision and

---

[1] State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

[2] See id.

[3] Clerk's Papers at 181.

final order. The remaining assignments of error, 1 to 179, relate to findings of fact that were not challenged below. Thus, they are not properly before this court.

Pathfinder House argues that there are "no rules that apply to judicial appeals from administrative orders" and that the cases cited by DSHS "are inapplicable because they are not cases of appeal to superior court." But Pathfinder House fails to provide any authority that this difference in the procedural posture matters. Moreover, although the superior court was sitting in an appellate capacity, the principle of RAP 2.5 is the same. It promotes judicial economy. For these reasons, we reject this argument.

Pathfinder House also argues that it *did* object to these findings of fact at the superior court. For support, it cites to its reply brief in the superior court. This misses the mark for two reasons. First, in this reply brief, Pathfinder House expressly conceded that its opening trial brief did "not identify specifically challenged findings of fact."[4] Second, the objections made in the reply brief were both too late and unsupported by argument. Pathfinder House merely attached a list of challenged findings and stated that "virtually all of [them] flow from the reviewing officer's credibility determination in FF 60-61."[5] For these reasons, we also reject this argument.

---

[4] Id. at 163.

[5] Id. at 165.

## RCW 34.05.570—JUDICIAL REVIEW

Pathfinder House argues that the review decision and final order is invalid. Because Pathfinder House fails in its burden to show that the review decision and final order is invalid for any reason, we disagree.

This court's review of an agency action is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW.[6] This court reviews the review judge's final order, not the ALJ's decision or the superior court's order.[7] We review the record before the agency.[8]

This court reviews de novo conclusions of law.[9] We review factual determinations from a final administrative decision under the substantial evidence standard.[10] Unchallenged findings are verities on appeal.[11]

RCW 34.05.570(3) provides the specific grounds for which a reviewing court may reverse an administrative decision. The party seeking relief bears the burden of demonstrating the invalidity of the agency action.[12]

---

[6] Olympic Healthcare Servs. II LLC v. Dep't of Soc. & Health Servs., 175 Wn. App. 174, 180, 304 P.3d 491 (2013).

[7] Id. at 181.

[8] Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[9] Olympic Healthcare, 175 Wn. App. at 181.

[10] Martini v. Emp't Sec. Dep't, 98 Wn. App. 791, 795, 990 P.2d 981 (2000).

[11] Tapper, 122 Wn.2d at 407.

[12] Olympic Healthcare, 175 Wn. App. at 180.

We note that Pathfinder House fails, with a limited exception in its reply brief, to specify in its briefing to this court which of the subsections of RCW 34.05.570(3) are at issue. It sought to cure this defect in response to questioning at oral argument. Specifically, it identified subsections (c), (d), (e), and (i) as the legal bases for its arguments. Moreover, it admitted that its arguments overlap in these subsections. With these clarifications in mind, we address these overlapping arguments.

*RCW 34.05.570(3)(d) – Erroneous Interpretation of the Law*

Pathfinder House argues that relief is warranted because the review judge "confuse[d] the standard under which the initial order [was] to be reviewed" and because the review judge "improperly limited the scope of her review." We disagree with both arguments.

Under RCW 34.05.570(3)(d), the court shall grant relief from an agency order if the agency has erroneously interpreted or applied the law.

First, Pathfinder House argues that the review judge confused the standard of review. Specifically, it contends that the review judge relied on a former version of WAC 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 and did not conduct a de novo review.

WAC 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(1) and RCW 34.05.464(4) discuss the authority of the review judge.

WAC 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(1) provides:

> The review judge has the same decision-making authority as the ALJ. The review judge considers the entire record and decides the case de novo (anew). In reviewing findings of fact, the review judge must give due regard to the ALJ's opportunity to observe witnesses.

7

RCW 34.05.464(4) provides:

> The reviewing officer shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing, except to the extent that the issues subject to review are limited by a provision of law or by the reviewing officer upon notice to all the parties. In reviewing findings of fact by presiding officers, the reviewing officers shall give due regard to the presiding officer's opportunity to observe the witnesses.

Here, the review judge applied the proper standard of review. The review decision and final order consistently identifies these provisions, WAC 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(1) and RCW 34.05.464(4), as providing the relevant authority. It correctly states that the review judge "has the same decision-making authority when deciding and entering the Final Order as the ALJ had while presiding over the hearing and deciding and entering the Initial Order . . . ."[13] And it explicitly notes that administrative review is different from appellate review, because a review judge does not have the same level of deference.[14] Further, it expressly states, "Because the ALJ is directed to decide the issues de novo, *the undersigned has also decided the issues de novo.*"[15] In short, the record shows that the review judge properly applied a de novo standard of review.

Pathfinder House claims that although the review judge "appears to give credence to the proper standard . . . she nevertheless relied on the substantial evidence test of the former WAC." For support, it quotes a portion of the review

---

[13] Administrative Record at 91.

[14] Id.

[15] Id. at 92 (emphasis added).

decision and final order stating, "'After review, the undersigned left unchanged those Findings of Fact supported by substantial evidence based on the entire record.'"

But Pathfinder House fails to point out that the review decision and final order then states, "Where findings were not supported by substantial evidence based on the entire record they have been stricken or amended. Where additional findings are necessary, they have been added or adopted findings supplemented."

Essentially, the review judge left unchanged those findings she agreed with, and she modified or changed findings that she did not agree with. This approach reflects application of the proper standard of review.

Pathfinder House next argues that the review judge confused the standard of review "by appearing to claim that the de novo requirement applied to issues." Pathfinder House argues that the law requires the review judge "to decide the 'case' anew, not just the 'issues.'" This makes no sense.

The review judge's use of the word "issues" rather than "case" does not show that she misunderstood her legal authority. It is apparent that the review judge considered the case de novo. Significantly, in the review decision and final order, she stated:

> Review Judges must personally consider the whole record or such portions of it as may be cited by the parties. Consequently, the undersigned has considered the adequacy, appropriateness, and legal correctness of *all Initial Findings of Fact, Conclusions of Law, admitted evidence, any previous proceedings and orders, regardless of whether any party has asked that they be reviewed*. Because the ALJ is directed to decide the issues de novo, the undersigned has also decided the issues de novo. In

9

accordance with RCW 34.05.464(4) and WAC 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(1), the undersigned has given due regard to the ALJ's opportunity to observe the witnesses, ***but has otherwise independently decided the case***.[16]

In short, this argument is without merit.

Pathfinder House also argues that the review judge "misunderstands the WAC." It points out that the review judge referred to the authority of the ALJ as the basis for her authority. And Pathfinder House argues that the review judge's authority is explicitly granted, rather than derived from the ALJ. Regardless of this reference by the review judge, this record shows that she applied the correct standard of review. This argument to the contrary is unpersuasive.

In sum, Pathfinder House fails to show that the review judge applied the wrong standard of review in this case.

Second, Pathfinder House argues that relief is warranted because the review judge improperly limited the scope of her review. Specifically, it contends that the review judge "explicitly refused to consider issues raised by the appellants." The record does not support this argument and we reject it.

To support this argument, Pathfinder House points to the following portion of the review decision and final order that states:

> The Department is correct that the Appellants cannot appeal any additional findings of fact and conclusions of law in the Initial Order, and may only respond to those challenged by the Department. The portion of the Appellants' response that responds to the Department's challenges to Initial Findings of Fact is accepted and has been considered. To the extent that the Appellants seek to

---

[16] Id. (emphasis added) (citations omitted).

appeal any aspect of the Initial Order, that appeal needed to be filed in compliance with the timelines in WAC 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.[17]

Pathfinder House asserts, "Implicit in the foregoing quotation is that the [review judge] did not in fact consider the entire record, and only a portion of [Pathfinder House's] response."

A fair reading of the quoted passage does not support this argument. Clearly, the judge referred in this passage to the fact that the Department initiated review of the initial order and Pathfinder House did not seek cross-review. Having failed to do so, the issues that were properly before the review judge were defined by the Department's challenges and Pathfinder House's responses to them.

This, of course, has nothing to do with whether the review judge failed to consider the entire record for the matters properly before her. She expressly stated that she considered the written transcript of the hearing, the reconstructed record, the documents admitted as exhibits, the initial order, the petition for review, and Pathfinder House's response. She also expressly stated that she considered "*all* Initial Findings of Fact, Conclusions of Law, admitted evidence, any previous proceedings and orders, *regardless of whether any party has asked that they be reviewed*."[18] Pathfinder House does not identify any "issues raised by appellants" that were not considered.

---

[17] Id. at 90.

[18] Id. at 92 (emphasis added).

In sum, Pathfinder House fails to show that the review judge improperly limited the scope of her review for the matters that were properly before her.

Pathfinder House argues that the WAC cited by the review judge, WAC 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, which provides that each party's request for review must meet certain deadlines, conflicts with RCW 34.05.464(4), which provides that review judges "shall exercise all the decision-making power." It also claims that this WAC conflicts with WAC 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(1), which provides that a review judge decides the case de novo.

But Pathfinder House fails to explain why this supposed conflict, if such a conflict exists, requires this court to grant relief. The review judge in this case expressly considered *all* of the findings, conclusions, previous proceedings and orders and considered the case de novo. Accordingly, we decline to address these arguments further.

Pathfinder House also argues that the review judge did not consider Attachment B to its response, which contains a chart of the "origin of sexual words used." It argues that "[t]here can be seen from the record (references to Attachments C-G to appellants' response) of who used what terms." But the fact that the review judge referred to attachments C to G does not mean that she failed to consider Attachment B. More importantly, Pathfinder House fails to make a persuasive case why the omission of mention of Attachment B shows either that it was not considered or that Pathfinder House was prejudiced.

Pathfinder House argues that evidence of the review judge's disregard of its arguments is "her failure to include in her Review Decision and Final Order,

significant portions of Appellant's Response to the Petition for Review" including Attachment A, Attachment B, Appendix A, the Contents and list of Attachments. To support this, Pathfinder House cites to the portion of the review decision and final order that incorporates text from Pathfinder House's response to the petition for review. The review judge properly identified this quoted text as Pathfinder House's argument. The fact that the review judge did not also include the text from the attachments and appendices in this quotation has no significance and no demonstrable prejudice to Pathfinder House. This quotation was "for the easy reference of the reader" and is not indicative of what the review judge considered in her review.[19] Thus, Pathfinder House fails to point to anything in the review decision and final order suggesting that the review judge did not consider the attachments or that certain items were excluded from review.

In its reply brief, Pathfinder House argues that relief is warranted, for these same reasons, under RCW 34.05.570(3)(c). That subsection provides that the court shall grant relief from an agency order if it determines that the agency "has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure."[20] But because this claim is based on the same arguments just discussed, and Pathfinder House candidly admitted at oral argument that its arguments overlap, we reject this argument for the same reasons.

---

[19] Id. at 2.

[20] RCW 34.05.570(3)(c).

13

*RCW 34.05.570(3)(e) – Substantial Evidence*

Pathfinder House argues that the review decision and final order is not supported by substantial evidence in the record. We hold that the findings properly before us for review and the final order are supported by substantial evidence.

Under RCW 34.05.570(3)(e), the court shall grant relief from an agency order if "[t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court . . . ." "'An agency order is supported by substantial evidence if there is a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'"[21] An appellate court "will not 'disturb findings of fact supported by substantial evidence even if there is conflicting evidence.'"[22]

With respect to the license revocation, the review judge upheld the enforcement action. It determined that Nancy Meyer violated four WACs and that the remedies were appropriate.

First, the review judge concluded that Nancy Meyer violated WAC 388-76-10020, which requires the provider to have the "[u]nderstanding, ability, emotional stability and physical health necessary to meet the psychosocial, personal, and special care needs of vulnerable adults." The review judge

---

[21] Olympic Healthcare, 175 Wn. App. at 181 (internal quotation marks omitted) (quoting Hardee v. Dep't of Soc. & Health Servs., 172 Wn.2d 1, 7, 256 P.3d 339 (2011)).

[22] McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012) (quoting Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010)).

concluded that Nancy Meyer violated this regulation when she failed to "appropriately deal with . . . incidents of sexual and mental abuse," which showed that she "does not possess the understanding to operate an adult family home."

Second, the review judge concluded that Nancy Meyer violated WAC 388-76-10620(2)(a) and (c). This regulation sets forth resident rights, including the resident's right to "[c]hoose activities, schedules, and health care consistent with his or her interests, assessments, and negotiated care plan," and the right to "[m]ake choices about aspects of his or her life in the home that are significant to the resident."[23] The review judge concluded that Nancy Meyer violated this regulation when she failed to allow three residents to have control over food choices.

Third, the review judge concluded that Nancy Meyer violated WAC 388-76-10670(1), (2), (3), and (4), which provide for prevention of abuse. In general, the review judge concluded that Nancy Mayer violated this regulation when she failed to protect her residents from verbal confrontations and belittling behavior.

Fourth, the review judge concluded that Nancy Meyer violated WAC 388-76-10673(2)(a) and (b). This regulation provides for mandated abuse and neglect reporting to DSHS.[24] The review judge concluded that Nancy Meyer violated this regulation because "she did not report sexual abuse to the appropriate authorities when she became aware of the report that it occurred."

---

[23] WAC 388-76-10620(2)(a), (c).

[24] WAC 388-76-10673.

With respect to the allegations of neglect and abuse, the review judge concluded that each appellant's conduct was negligent because "[f]ailing to take any measures to protect the other residents in the adult family home from sexual abuse is an act or omission that demonstrates a serious disregard of such magnitude as to constitute a clear and present danger to a vulnerable adult's health, welfare, or safety." Additionally, the review judge concluded that Ms. Brooks mentally abused residents of the adult family home, because she yelled at and belittled residents.

These conclusions are supported by the findings of fact and, moreover, are supported by substantial evidence in the record. In particular, they are supported by the review judge's credibility determinations. In finding of fact 60, the review judge agreed with the ALJ's determination that "the evidence supports a finding that the statements attributed to the Appellants by Department witnesses were made and were accurately documented."

And in finding of fact 61, the review judge found that the Appellants' initial statements were more credible than their later, conflicting testimony. She stated:

> The statements made by the Appellants were not hearsay. Some were made closer in time to the incident, some were made during the time period when the Department alleges the Appellants should have reported contact between Tommy and Tyler, and these statements were more credible than their later, conflicting, testimony. As told by the Appellants at the outset of the investigation, there was an instance of sexual contact between Tommy and Tyler on February 23, 2009. Mr. Meyer and Ms. Brooks learned of it that day. They told Mrs. Meyer of the incident when she returned from a trip on February 27, 2009. In response to the incident, Mrs. Meyer scheduled a counseling appointment for Tyler, and Mr. Meyer made the three responses outlined in Finding of Fact 26. Ms. Brooks told Heather Silva of the incident on March 27, 2009. By the time of the RCCP investigations in July, the

Appellants had determined on a course of denying that the incident occurred. This meant that they had to deny the follow-up precautions they made. This meant that they had to deny statements they made to others verbally and in writing. At hearing, this meant that they "forgot" a number of conversations, even while "remembering" contemporaneous conversations. Their initial statements, both verbal and written are more credible than their later denials. [25]

These findings are supported by substantial evidence in the record. Further, other findings of fact were based on this credibility determination. The review decision and final order stated that its findings were "primarily based [on] the statements made by the Appellants to the Department witnesses." In general, these other findings of fact show that the Meyers and Brooks knew about the nonconsensual inappropriate sexual contact between Tommy and Tyler, they failed to report it to DSHS or to legal authorities, and they put other residents in the home at risk. And these findings support the decision to revoke the adult family home license and the decision to issue findings of neglect and abuse. In sum, substantial evidence supports the challenged findings and the final order.

Pathfinder House does not appear to contest that the alleged conduct justifies the agency's action. Rather, it challenges the credibility of DSHS's witnesses and argues that at least one of them lied. But this court must accept the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable, but competing inferences.[26] The review judge expressly

_____

[25] Administrative Record at 89-90.

[26] Kittitas County v. Kittitas County Conservation, 176 Wn. App. 38, 48, 308 P.3d 745 (2013).

determined that DSHS's witnesses were credible and that the appellants' "initial statements, both verbal and written are more credible than their later denials."[27] This court does not review such determinations.

*RCW 34.05.570(3)(i) - Arbitrary and Capricious*

Pathfinder House argues that the review judge was arbitrary and capricious. We disagree.

Under RCW 34.05.570(3)(i), the court shall grant relief from an agency order if the order is arbitrary and capricious. "'Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances.'"[28] "'Action taken after giving respondent ample opportunity to be heard, exercised honestly and upon due consideration, even though it may be believed an erroneous decision has been reached, is not arbitrary or capricious.'"[29] The scope of review under this standard is "very narrow" and the party seeking to demonstrate that action is arbitrary and capricious "must carry a heavy burden."[30]

Here, Pathfinder House argues that the order is arbitrary and capricious for several reasons.

---

[27] Administrative Record at 90.

[28] Heinmiller v. Dep't of Health, 127 Wn.2d 595, 609, 903 P.2d 433 (1995) (quoting Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)).

[29] Id. at 609-10 (quoting WA Med. Disciplinary Bd. v. Johnston, 99 Wn.2d 466, 483, 663 P.2d 457 (1983)).

[30] Pierce County Sheriff, 98 Wn.2d at 695.

First, it argues that the review judge failed to follow proper review standards, failed to consider Pathfinder House's response, and failed to consider Pathfinder House's challenge to the findings of fact. Because we already addressed the substance of these arguments in prior portions of this opinion, we reject them for the same reasons.

Second, it argues that the "clearest example" that the order is arbitrary and capricious is the review judge "turn[ing] a blind eye to the fact that [a DSHS witness] . . . virtually lied" and, instead, finding that the witness had misunderstood. As we already discussed, credibility determinations—and that is what this is—are not reviewable. Thus, we reject this argument as well.

Finally, Pathfinder House argues that the review judge misquoted the record, which shows "a willingness to misread the record." But the changes to the quotation by the review judge were insignificant. This argument is wholly unpersuasive.

To summarize, Pathfinder House fails to show the agency order is invalid for any reason specified by the controlling statute. Accordingly, we conclude that the review decision and final order is correct.

## ATTORNEY FEES

Pathfinder House seeks an award of attorney fees on appeal as the prevailing party under RCW 4.84.350. We deny its request.

RCW 4.84.350(1) provides for an award of attorney fees to a prevailing party "unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." It further provides, "A qualified party

19

shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought."[31]

Pathfinder House does not obtain any relief on any significant issue and is not the prevailing party. Thus, it is not entitled to fees on appeal.

We affirm the order on judicial review, which affirms the review decision and final order of the DSHS Board of Appeals. We also deny Pathfinder House's request for attorney fees on appeal.

Cox, J.

WE CONCUR:

---

[31] RCW 4.84.350(1).