# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

CHRISTOPHER BELLING,              )
                                  )   No. 34066-0-III
            Appellant,            )
                                  )
    v.                            )
                                  )
EMPLOYMENT SECURITY              )   UNPUBLISHED OPINION
DEPARTMENT of the State of        )
Washington,                       )
                                  )
            Respondent.           )

SIDDOWAY, J. — After Christopher Belling successfully appealed the Department

of Labor and Industries' (DLI) termination of his workers' compensation benefits and

was awarded retroactive benefits exceeding $48,000.00, the Employment Security

Department (ESD) demanded the repayment of duplicative unemployment insurance

benefits he received for the same period he was out of work. While he does not dispute

that he was overpaid, Mr. Belling contended unsuccessfully in the administrative process,

and argues in this appeal, that ESD should have waived repayment of 30 percent of the

overpaid unemployment insurance benefits—the percentage of the award from DLI that

he owed his lawyers as a contingent fee. He demonstrates no abuse of discretion by the

ESD review commissioner, who found that (1) repayment of the unemployment

insurance benefits would not leave him with less than his net recovery of workers

compensation under the ESD's decision in *In re Peltier*[1] and (2) he demonstrated no

financial hardship basis supporting waiver of the repayment obligation. We affirm.

## PROCEDURAL BACKGROUND

In 2005, Christopher Belling suffered a disabling workplace injury. As a result,

DLI paid him time loss benefits of $1,486.00 twice each month. In March 2011, DLI

notified him that it was terminating time loss payments based on its determination that he

could work. It paid him $9,271.80 for a permanent partial disability, which compensated

him for his future reduced capacity for work. Mr. Belling appealed the DLI decision to

terminate his time loss benefits, with representation by a lawyer who agreed to handle the

appeal on a 30 percent contingent fee basis.

Pending the appeal, Mr. Belling applied for unemployment insurance benefits.

ESD paid Mr. Belling $22,924.00 in benefits from June 2011 to April 2012.

In June 2012, the DLI appeal was concluded by an order under which Mr.

Belling's time loss benefits were reinstated through a lump sum payment of $48,251.19.

In making payment, DLI deducted the permanent partial disability payment of $9,271.80

he had received in 2011. Mr. Belling paid his lawyers $14,475.36, which was their 30

---

[1] No. 04-2006-22057 (Wash. Emp't Sec. Dep't Comm'r Dec. No. 910, 2d Series Feb. 16, 2007), 2007 WL 5172355.

2

percent of the $48,251.19 recovery. He also reimbursed $5,255.21 in costs that his lawyers had advanced on his behalf.

Once notified that DLI had compensated Mr. Belling for the same period in which he had received unemployment insurance benefits, ESD demanded repayment of the $22,924.00 of benefits it had paid. Under RCW 50.20.085 a claimant may not concurrently receive unemployment compensation and DLI time loss payments.

Mr. Belling did not dispute that he had been overpaid, but a letter and notice of appeal from his lawyers took the position that ESD "is legally obligated to pay its share of attorney fees for the efforts that our office has taken to recover the retroactive time-loss benefits from [DLI]." Clerk's Papers (CP) at 102. Treating ESD as owing the 30 percent fee on the $22,924.00 it would recover as a result of the successful DLI appeal, Mr. Belling's lawyer tendered repayment of $16,046.80. At the hearing on Mr. Belling's appeal of ESD's determination that he must repay, he renewed his request that ESD waive his repayment obligation in an amount equal to its asserted pro rata responsibility for his contingent attorney fee.

The administrative law judge (ALJ) assigned to Mr. Belling's appeal acknowledged in her decision that when an unemployment compensation claimant is not "at fault" in causing the overpayment (and she found that Mr. Belling was not), "[ESD] may consider partial or full waiver of claimant's overpayment pursuant to the rationale in *Delagrave v. Emp't Sec. Dep't*, 127 Wn. App. 596, 111 P.3d 879 (2005), which allows

3

partial waiver on the basis of fairness." CP at 205. Although Mr. Belling argued that

repayment to ESD of the full amount of unemployment insurance benefits would leave

him with a net loss on his successful DLI appeal, the ALJ concluded otherwise. She also

made the following finding as to financial hardship:

> The claimant continues to receive $1,486 twice each month in time loss
> benefits from [DLI]. The claimant could at some point in the future receive
> another [p]ermanent partial [d]isability payout. The claimant also receives
> $1,700 per month in Social Security Disability Benefits. The claimant pays
> $600 per month in rent. He is responsible for no minor children. He "eats
> out a lot", and has no set grocery budget. The claimant has no debt in
> collections, and owns three vehicles. He pays $280 per week for his cell
> phone service.

CP at 204. She concluded that "repayment would not be unfair and repayment would not

be against equity and good conscience." CP at 206.

Mr. Belling petitioned for review. The ESD review commissioner affirmed and

adopted the ALJ's findings of fact and conclusions of law. Mr. Belling then appealed to

the superior court, which modified the commissioner's decision, waiving $3,645.18 of

the overpayment. In arriving at this amount, the court accepted Mr. Belling's assertion

that the workers compensation he had received net of his attorney fees was only

$19,278.82, and thereby $3,645.18 less than the amount he was being asked to repay to

ESD.

Mr. Belling appeals the trial court's decision reducing the overpayment

determination by only $3,645.18. ESD cross appeals the trial court's waiver of $3,645.18

4

of the overpayment.

## ANALYSIS

The Washington Administrative Procedure Act, chapter 34.05 RCW, governs our review of a decision by an ESD commissioner. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). We review only the commissioner's decision, not the administrative law judge's decision or the superior court's ruling. *Id.* We base our decision on the administrative record before the commissioner. *Id.*

Under the Employment Security Act, Title 50 RCW, an individual is disqualified from receiving unemployment insurance benefits with respect to any day or days for which he or she receives workers' compensation. RCW 50.20.085. RCW 50.20.190 authorizes the ESD to issue an overpayment assessment if this ineligibility applies, and imposes an obligation on the individual to repay unless the commissioner waives recovery. The commissioner "may waive an overpayment if the commissioner finds that the overpayment was not the result of fraud, misrepresentation, willful nondisclosure, or fault attributable to the individual and that the recovery thereof would be against equity and good conscience." RCW 50.20.190(2).

In *Delagrave v. Employment Security Department*, 127 Wn. App. 596 (2005), the lawyer representing Mr. Belling in this appeal asked this court to apply the "common fund" doctrine to ESD's right to recover overpayments in cases such as this, where a worker incurred attorney fees in recovering duplicative workers' compensation. He

5

argued there, as he does now, that in fairness, ESD should pay a pro rata share of the cost of the successful workers' compensation appeal. This court held that "[i]f the legislature had intended attorney fees to be available in overlapping benefits scenarios like the one here, the logical place to include such a provision would be within [RCW 50.32.160, 50.20.085, or 50.20.190]." *Id.* at 605. Because the legislature had not provided for payment of the worker's attorney fees, this court refused to read such a requirement into the Employment Security Act.

Sua sponte, however, this court raised the ESD commissioner's discretion to waive recovery of an overpayment under RCW 50.20.190 if the worker was not at fault and recovering the overpayment would be against equity and good conscience. Since the commissioner had not considered whether Mr. Delagrave's liability for attorney fees was a reason for waiving recovery of the overpayment, this court remanded, directing the commissioner to entertain an argument for waiver.

Thereafter, in *In re Peltier*, which the ESD commissioner has designated as precedential,[2] the commissioner waived a portion of an overpayment of unemployment insurance benefits where the worker had incurred attorney fees in recovering the

---

[2] Under RCW 50.32.095, the commissioner may designate certain commissioner's decisions as precedents. Decisions thus designated are to be treated as persuasive authority by a reviewing court. *Martini v. Emp't Sec. Dep't*, 98 Wn. App. 791, 795, 990 P.2d 981 (2000).

6

duplicative workers' compensation payments. In that case, the worker had received

$9,581.00 in unemployment insurance benefits before she successfully appealed a DLI

decision and received a duplicative award of retroactive workers' compensation in the

amount of $10,351.56. After paying her lawyers, however, Ms. Peltier's net workers'

compensation recovery was $7,230.00. The commissioner explained why a partial

waiver was appropriate:

> Here, the claimant argues that she should only have to repay $7,230 of her
> $9,581, since $7,230 is all that she received in workers' compensation after
> her attorney was paid. We believe that claimant's argument has merit in
> the instant case and is certainly reasonable when considering fundamental
> fairness of the claimant's situation. Accordingly, we hold that the claimant
> is liable for repayment of her overpayment in the amount of $7,230 and that
> $2351 of her overpayment is waived pursuant to RCW 50.20.190. *See*
> *Delagrave.*

*Id.* at *1.

A court may grant relief from an agency order in an adjudicative proceeding only

if it finds one of the grounds identified by RCW 34.05.570(3). Mr. Belling contended in

his petition for judicial review that the commissioner erroneously interpreted or applied

the law. RCW 34.05.570(3)(d); CP at 213 (claiming entitlement to waiver "based upon

the statutory construction of RCW 50.20.190").

A *Peltier* analysis was included in the ALJ's conclusions of law in Mr. Belling's

case, and was adopted by the commissioner. The commissioner concluded that reducing

the $48,251.19 workers' compensation award by both the $14,475.36 contingent fee and

7

$5,255.21 in costs still left Mr. Belling with a net award of $28,850.62 in workers' compensation. *See* CP at 205-06 (Conclusions of Law 4-7). Accordingly, even if required to repay ESD and even after paying all of the associated fees and costs, Mr. Belling was $5,626.62 ahead for having appealed DLI's decision.

Mr. Belling has assigned error to the relevant conclusions of law, arguing that the starting figure for the analysis should not be the $48,251.19 award of workers' compensation, but the $38,979.39 that Mr. Belling was paid in 2012 after DLI recouped from his award the $9,271.80 permanent partial disability payment it had paid in 2011, to which he was not entitled. Using $38,979.39 as the starting figure, the recovery net of attorney fees and costs is $19,248.82—less than the $22,924.00 overpayment, and an amount that would parallel the circumstances in which a portion of the overpayment was waived in *Peltier.* We disagree that $38,979.39 is the correct starting figure. Mr. Belling had and received the $9,271.80 workers' compensation paid in 2011. If he had returned that check, to which he ultimately proved unentitled, he would have been paid the full $48,251.19 awarded in retroactive time loss benefits. And if we add the $9,271.80 that he had and received in 2011 to the $38,979.39 he had and received in 2012, the total workers' compensation received was $48,251.19. Notably, Mr. Belling's lawyers

8

calculated their 30 percent contingent fee based on the $48,251.19 award.[3] The

commissioner correctly applied *Peltier*'s analysis.[4]

The commissioner's findings also address financial hardship, which Mr. Belling

claimed during the hearing. Financial hardship is explicitly recognized as a basis for

waiver under WAC 192-220-030(2). While Mr. Belling assigns error to the finding on

Mr. Belling's financial circumstances, it is only to speculation in the finding about a

future permanent partial disability payout. He does not challenge the finding's discussion

of the extent by which his income exceeds his expenses.

---

[3] By analogy, if I deliver you a piece of cake on Monday, realize on Tuesday that I was supposed to deliver you a whole cake, and bring you the whole cake in exchange for return of the piece, you have received a whole cake. The same would be true if you had eaten the first piece, and I recovered it by cutting it out of the whole cake.

[4] In a deviation from *Peltier*, the dissent proposes a "second method" of calculation. Slip op. (dissent) at 11. Under *Peltier*, ESD looks at the DLI recovery on appeal less the cost of the appeal and—if that would result in a loss—waives the employee's obligation to repay the unemployment compensation to the extent of that loss. In essence, under *Peltier*, ESD bears the burden of the unemployment compensation that was not a windfall to the employee.

Under the dissent's "second method" of calculation, ESD bears not only that burden, but an additional cost, so that the employee can retain the permanent partial disability payment to which he was not entitled.

Presumably, Mr. Belling took the risk of that further "loss" because he believed he was better off in the long run by having his time loss benefits reinstated and avoiding the obligation to work or remain available to work. If an employee is truly going to be better off by keeping a permanent partial disability payment and continuing to rely on unemployment compensation, we should not incentivize him to pursue an otherwise-unwarranted appeal by a waiver process that lets him keep both his DLI award and an earlier permanent partial disability payment to which he was not entitled.

Instead, Mr. Belling's principal argument on appeal is that the commissioner's exercise of discretion to waive overpayment where "recovery . . . would be against equity and good conscience" as provided by RCW 50.20.190(2) requires more than protecting a successful DLI appellant against a net loss, as was done in *Peltier*—instead, he argues, "ESD should be required to pay its pro rata share of attorney fees and costs, or make some other adjustment of what it receives, when *it*, not Mr. Belling, acquired the greatest financial benefit from Mr. Belling's successful litigation"—a financial benefit he argues that ESD receives "without risk or the expenditure of any monies." Br. of Appellant at 1. He complains that neither the ALJ, nor the commissioner on review, provided adequate findings as to why "equity and good conscience" does not require ESD to pay fees for services from which it benefitted. In short, he believes he correctly determined what "equity and good conscience" requires when he discounted the overpayment liability by ESD's $6,875.20 "share" of the contingent fee and tendered $16,046.80 instead. Br. of Appellant at 19.

Questions of statutory construction are reviewed de novo. *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005). We review a decision by an ESD commissioner declining to waive recovery of an overpayment for abuse of discretion. *Berland v. Emp't Sec. Dep't*, 52 Wn. App. 401, 410, 760 P.2d 959 (1988). An abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable

10

grounds or for untenable reasons. *Graves v. Emp't Sec. Dep't*, 144 Wn. App. 302, 309, 182 P.3d 1004 (2008).

Mr. Belling fails to show that the commissioner misconstrued RCW 50.20.190(2) or abused her discretion. He does not demonstrate financial hardship or that repayment of the duplicative unemployment insurance benefits would cause him to sustain a net loss from his successful DLI appeal. He demonstrates only that the commissioner did not share his view the ESD should, in "equity and good conscience," contribute toward the contingent fee he owes his lawyer so he can retain a larger percentage of his recovery from the successful appeal. The commissioner's view is not manifestly unreasonable. It is consistent with the American rule that attorney fees are not recoverable unless provided for by contract, statute, or recognized equitable principles. *See Delagrave*, 127 Wn. App. at 606. It is consistent with this court's refusal to read an equitable expansion of entitlement of attorney fees into the Employment Security Act in *Delagrave. Id.* It is consistent with the fact that under the Industrial Insurance Act, Title 51 RCW, Mr. Belling was not entitled to recover his attorney fees even from DLI—and unlike ESD, DLI is the agency that proved to have been wrong. RCW 51.52.130; *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 675 n.6, 989 P.2d 1111 (1999) (Talmadge, J. concurring).

11

No. 34066-0-III

*Belling v. Employment Security Department*

We reverse the superior court's decision and affirm the decision of commissioner dated June 14, 2013. Because we affirm the commissioner's decision, we deny Mr. Belling's request for an award of fees under RCW 50.32.160.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

I CONCUR:

Korsmo, J.

12

No. 34066-0-III

FEARING, C.J. (dissenting) — I dissent for three reasons. First, the Washington

Employment Security Department's (ESD's) findings of fact and conclusions of law fail

to adequately address, in light of *Delagrave v. Employment Security Department*, 127

Wn. App. 596, 111 P.3d 879 (2005), whether demanding full reimbursement of

unemployment compensation benefits serves equity and good conscience. Second, under

the ESD's own precedent, *In re Peltier*, No. 04-2006-22057 (Wash. Emp't Sec. Dep't

Comm'r Dec. No. 910, 2d Series Feb. 16, 2007), 2007 WL 5172355, Christopher Belling

should at the least only be required to reimburse the department $19,278.82, not the

$22,924 sought by ESD. Third, this court wrongly decided *Delagrave v. Employment*

*Security Department*. Equity and good conscience requires that ESD at least consider the

common fund doctrine when seeking recovery, from a worker, of the overlapping

amounts the worker procured by his or her attorney's efforts from the Department of

Labor & Industries (DLI). Fairness dictates that an injured and unemployed worker

should not bear, except in justifiable circumstances, the entire expense of correcting one

state agency's error when the correction benefits another state agency's accounting

balance.

At the least, this court should remand to ESD for a full determination of whether waiving partial reimbursement fulfills equity and good conscience and whether the common fund doctrine should apply. Finally, at the least, this court should affirm the superior court's waiver of $3,645.18.

## SOME FACTS

This appeal juxtaposes the operation of two state insurance plans afforded Washington workers: unemployment insurance available from the Employment Security Department and work injury insurance available from the Department of Labor & Industries. After DLI terminated Christopher Belling's worker compensation time loss benefits, ESD paid Belling $22,924 in unemployment benefits from June 2011 to April 2012. With the assistance of hired counsel, Belling appealed DLI's termination of benefits.

In June 2012, DLI awarded Christopher Belling worker compensation time loss benefits for March 8, 2011 to July 24, 2012. DLI thereby awarded Belling a gross lump sum of $48,251.19. Nevertheless, the department deducted from the lump sum (1) $9,271.80 to reimburse DLI for an earlier remittance to Belling for a permanent partial disability, (2) $14,475.36 as payment to Belling's attorney as fees on a thirty percent contingent fee basis, and (3) $5,255.21 in costs to be paid the attorney. CP at 204-05. Belling paid his counsel thirty percent of the entire $48,251.19 award, not the net award of $38,979.39 after deducting the earlier permanent partial disability payment.

2

After subtracting the three deductions, Belling netted $19,278.82.

With Christopher Belling's receipt of the lump sum payment from DLI, ESD sent a written demand to Belling that he refund all $22,924.00 of unemployment compensation he received from ESD from June 2011 through April 2012. In response, Belling tendered a check to ESD in the sum of $16,046.80, seventy percent of $22,924.00, since Belling recompensed his counsel on a thirty percent contingent fee rate. Belling concluded that ESD should share in the expense of the attorney since the attorney's work benefitted ESD. Belling did not seek reimbursement of any costs he incurred in appealing DLI's denial of benefits. I assume that ESD did not cash the $16,046.80 check.

## SOME PROCEDURE

Thereafter, ESD continued to seek recovery of the $22,924.00 that it claimed Christopher Belling owed. An ESD administrative law judge (ALJ) concluded that Belling was responsible for reimbursing ESD the entire $22,924.00 earlier paid him by the department. In so ruling, the ALJ found that:

> 9. The claimant continues to receive $1,486 twice each month in time loss benefits from [DLI]. The claimant could at some point in the future receive another [p]ermanent partial [d]isability payout. The claimant also receives $1,700 per month in Social Security Disability Benefits. The claimant pays $600 per month in rent. He is responsible for no minor children. He "eats out a lot," and has no set grocery budget. The claimant has no debt in collections, and owns three vehicles. He pays $280 per week for his cell phone service.

3

Clerk's Papers (CP) at 204. I do not know why the ALJ focused on debt in collection

rather than debt as a whole.

The ALJ entered a conclusion of law that read:

> 7. Here, the claimant received a back pay award for time loss
> benefits in the amount of $48,251.19 including PPD. After taking into
> consideration fees and costs, the amount claimant received ($28,850.62)
> was greater than the overpayment amount of $5,626.62. Thus, applying the
> calculation in *Peltier*, the claimant should be required to repay the full
> overpayment, in the amount of $22,924. The undersigned further
> concludes that repayment would not be unfair and repayment would not be
> against equity and good conscience.

CP at 206. The ALJ did not deduct the $9,271.80 reduction imposed by DLI for the

earlier partial permanent disability payment when determining Belling's net recovery

from DLI. The ESD commissioner adopted all findings of fact and conclusions of law

entered by the ALJ.

## LAW

### Sufficiency of Findings and Conclusions

On appeal to this court, Christopher Belling repeats his contention raised below.

He contends that equity demands that ESD share in the expense, including the cost of an

attorney, of his obtaining DLI payments. Belling emphasizes that he or his attorney

performed all the work, took the financial risk, and paid all the fees and costs to obtain a

settlement from DLI. Furthermore, on appeal, he newly contends that ESD entered

insufficient findings of fact as to whether it was equitable for him to pay all of the

4

attorney's fees and costs incurred in procuring the money that benefits ESD. I agree that ESD failed to enter sufficient findings of fact or conclusions of law. I will later address Belling's overall argument that equity demands that ESD share in the expenses of procuring the recovery from DLI.

Two unemployment compensation statutes and one regulation control the question on appeal. First, RCW 50.20.085 declares:

> An individual is disqualified from [unemployment compensation] benefits with respect to any day or days for which he or she is receiving, or has received, or will receive compensation under RCW 51.32.060 or 51.32.090 [worker compensation time loss benefits for permanent total and temporary total disability].

Christopher Belling concedes this statute compels at least partial reimbursement to ESD of the settlement he received from DLI. Second, RCW 50.20.190 reads:

> (1) An individual who is paid any amount as benefits under this title to which he or she is not entitled shall, *unless otherwise relieved pursuant to this section*, be liable for repayment of the amount overpaid. The department shall issue an overpayment assessment setting forth the reasons for and the amount of the overpayment. . . .
> (2) The commissioner *may waive* an overpayment if the commissioner finds that the overpayment was not the result of fraud, misrepresentation, willful nondisclosure, or fault attributable to the individual and that the recovery thereof would be against *equity and good conscience*. . . .

(Emphasis added.) The two statutes evidence an intent by the Washington State Legislature for DLI's ledger, not the Employment Security Department's balance sheet,

to be charged when a work injury renders a worker unemployed. Third, WAC 192-220-

030, which implements RCW 50.20.190, states:

> (1) "Equity and good conscience" means *fairness as applied to a given set of circumstances*.
> (2) It will be against equity and good conscience to deny waiver when repayment of the overpayment would deprive you of income required to provide for basic necessities including food, shelter, medicine, utilities, and related expenses. Unless there are unusual circumstances which would argue against waiver, the department will presume repayment would leave you unable to provide basic necessities if your total household resources in relation to household size do not exceed seventy percent of the Lower Living Standard Income Level (LLSIL) and circumstances are not expected to change within the next ninety days.
> (3) The *department may also consider, but is not limited to, the following factors in determining whether waiver should be granted for reasons of equity and good conscience:*
> (a) Your general health, including disability, competency, and mental or physical impairment;
> (b) Your education level, including literacy;
> (c) Whether you are currently employed and your history of unemployment;
> (d) Your future earnings potential based on your occupation, skills, and the local labor market;
> (e) Your marital status and number of dependents, including whether other household members are employed;
> (f) Whether an error by department staff contributed to the overpayment;
> (g) Whether you refused or were ineligible for other government benefits because you received unemployment benefits; and
> (h) Other factors indicating that repayment of the full amount would cause you undue economic, physical, or mental hardship.
>  . . . .
> (5) The decision to grant or deny waiver will be based on the totality of circumstances rather than the presence of a single factor listed in subsections (2), (3), and (4).

6

(Emphasis added.) Note that the statute and regulation use three terms: equity, good conscience, and fairness in the particular circumstances. I do not fathom any difference in meaning between the terms.

Christopher Belling relies on *Delagrave v. Employment Security Department*, 127 Wn. App. 596 (2005). Don Delagrave also received a lump sum retroactive time loss settlement from DLI for a window of time that overlapped the same period during which he received unemployment compensation. ESD sought reimbursement of unemployment compensation paid. Delagrave requested a reduction in the repayment based on his incurring attorney fees and costs in obtaining the settlement from DLI. Delagrave asked for a waiver for equitable purposes. The ESD commissioner denied the request under a conclusion of law that read: "neither an administrative law judge nor the undersigned has the authority to waive part or all of an overpayment for any other reason than the 'equity and good conscience' provisions." *Delagrave v. Employment Security Department*, 127 Wn. App. at 603. The *Delagrave* court resolved that the conclusion of law meant that ESD took the position that, under no circumstances, would equity and good conscience permit a reduction in the overpayment because of the claimant's payment of attorney fees and costs to recover DLI payments.

WAC 192-220-030 does not limit the Employment Security Department to waiving reimbursement, on the basis of "equity and good conscience," to the financial condition of the unemployment compensation of the claimant. *Delagrave v. Employment*

7

*Security Department* addressed a former regulation, not WAC 192-220-030, but the regulation contained similar terms that did not limit waiver to the financial circumstances of the claimant. The *Delagrave* court noted that limiting waiver to the fiscal condition of the claimant would contradict the broad language of RCW 50.20.190 that permits waiver when reimbursement would "be against equity and good conscience" without any limitation. *Delagrave v. Employment Security Department*, 127 Wn. App. at 603. This court rejected the application of the common fund doctrine for purposes of waiver of the refund, a rejection I will later analyze. Nevertheless, we remanded the appeal to the commissioner of ESD to determine under the facts of the case whether the department should waive reimbursement. *Delagrave v. Employment Security Department* teaches that ESD may not summarily deny waiver of reimbursement on the basis that the law does not permit waiver when the unemployment compensation claimant incurs attorney fees and costs in reversing a denial of worker compensation benefits.

In Christopher Belling's case on appeal, the ESD administrative law judge entered no finding of fact that mentions whether waiver would serve equity and good conscience. The ALJ entered a conclusion of law that may be meatier than the conclusion of law in *Delagrave v. Employment Security Department*, but the conclusion still suffers from the same shortcoming as the conclusion of law in *Delagrave*. The ALJ's conclusions of law in this appeal includes the language: "The undersigned further concludes that repayment would not be unfair and repayment would not be against equity and good conscience."

8

CP at 206. The ESD commissioner adopted this conclusion of law. The conclusion of law, as its label implies, is only a conclusion. The conclusion does not inform us as to the reason for denying waiver. Since the findings of fact analyze the financial circumstances of Christopher Belling, the reader could judiciously conclude that, in violation of *Delagrave v. Employment Security Department*, ESD limited the question of waiver to the fiscal welfare of the claimant. The conclusion of law suggests that ESD repeated the mistake of denying waiver as a matter of law for the reason that the claimant seeks partial waiver on the ground of payment of attorney fees and costs in appealing a DLI decision. Therefore, at the least, this court should remand this appeal to ESD for a reassessment of waiver.

Brevity in opinion writing is commendable, but sometimes a terse opinion raises more questions than it answers. Our concise opinion in *Delagrave v. Employment Security Department* failed to provide any guidelines to ESD as to if and when it may or should grant waiver on the basis of the claimant's incurring attorney fees and costs when recovering DLI benefits. *Delagrave* does not answer the question of whether ESD may always exercise its discretion by denying reimbursement, when the claimant paid fees and costs, after reviewing the individual facts of the claimant's challenge to repayment of benefits. Nor does *Delagrave* explicitly answer the question as to whether equity and good conscience always requires that ESD share in the expense of the worker's recovery of worker compensation benefits.

9

The ESD ALJ and this court's majority opinion rely on *In re Peltier*, No. 04-2006-22057 (Wash. Emp't Sec. Dep't Comm'r Dec. 910, 2d Series Feb. 16, 2007), 2007 WL 5172355. This court may consider ESD commissioner rulings, such as *Peltier*, as persuasive authority. *Martini v. Employment Security Department*, 98 Wn. App. 791, 795, 990 P.2d 981 (2000). *Peltier*, however, provides no guidance for the factual circumstances and arguments forwarded by Christopher Belling in this appeal.

In *Peltier*, DLI also denied Suzanne Peltier time loss benefits, after which Peltier applied for and received unemployment compensation of $9,581.00. Later Peltier received retroactive worker compensation benefits of $10,351.56. After paying her attorney, Peltier received a net recovery from DLI in the sum of $7,230.00. ESD, nonetheless, sought reimbursement of $9,581.00. On appeal, the ESD commissioner ruled, under principles of equity and good conscience, that Peltier need only reimburse the department her net payment of $7,230.00. Peltier did not seek any other waiver of reimbursement. The commissioner never commented whether other circumstances might merit waiver to an extent more than the worker's net recovery. Assuming the ALJ and the ESD commissioners based conclusion of law seven on *Peltier*, they misplaced their reliance.

## *Peltier* Rule

Remember that the ESD commissioner ruled, in *In re Peltier*, that Suzanne Peltier need not reimburse ESD more than her net payment from DLI. Peltier only argued that

10

she should be able to deduct her attorney fees from her gross DLI payment to reach the sum of overpayment by ESD.

One could reach two different conclusions as to the amount of the net payment received by Christopher Belling from DLI. Under the first calculation, one only deducts attorney fees and costs incurred by Belling in order to obtain the additional DLI recovery. Under this calculation, one deducts fees of $14,475.36 and costs of $5,255.21 from the gross lump sum of $48,251.19 to arrive at the net recovery of $28,850.62. This net recovery exceeds the unemployment compensation payment of $22,924.00, such that Belling lost nothing by reason of appealing the DLI denial of benefits. The ESD ALJ and this court's majority impliedly employ this first calculation.

Under a second method of calculation, one deducts all amounts taken by DLI from the lump sum payment of $48,251.19, including the $9,271.80 that reimbursed DLI for a 2011 remittance to Christopher Belling for a permanent partial disability. After subtracting the attorney fees, costs, and earlier payment, Belling netted $19,278.82. This net recovery deceeds Belling's unemployment compensation benefits of $22,924.00. Under this calculation, Belling loses $3,645.18 by reason of challenging DLI's denial of continued benefits. He would have kept the $9,271.80 permanent partial disability payment and the $22,924.00 in unemployment compensation but for hiring the lawyer to challenge the DLI denial of worker compensation benefits. The superior court apparently performed this calculation and ruled that Belling need only reimburse ESD $19,278.82.

On appeal, ESD contends that the $9,271.80 covers the period that Christopher Belling received unemployment benefits. Nevertheless, ESD does not cite the record to support this factual proposition. Neither the ALJ nor the commissioner expressly so found. One might surmise that the 2011 lump sum payment covered a period during which Christopher Belling garnered unemployment compensation, but such surmising is speculative. Since the $9,271.80 compensated Belling for a reduced ability to garner income because of a permanent partial disability, the payment also likely compensated Belling primarily for a time period well into the future and beyond April 2012.

## Common Fund Doctrine and *Delagrave* Revisited

If I did not otherwise dissent from the majority's ruling, I might withhold, in favor of stare decisis, any challenge to the validity of *Delagrave v. Employment Security Department*'s rejection of the common fund doctrine. Since I dissent on other grounds, I forward this challenge.

*Delagrave v. Employment Security Department* held, in part, that the common fund doctrine does not apply to a worker's reimbursement of unemployment compensation benefits paid from the worker's recovery of worker compensation payments. The condensed reasoning of *Delagrave* miscarries. The purpose behind the common fund doctrine fulfills the prerequisite of equity, good conscience, and fairness in order to waive repayment. The common fund doctrine operates commensurately with

12

equity, good conscience, and fairness. The *Delagrave* court should not have outright rejected the use of the common fund doctrine.

The common fund doctrine provides that an attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed his or her compensation out of the whole fund, when his or her services are rendered on behalf of, and are a benefit to, the common fund. *Winters v. State Farm Mutual Automobile Insurance Co.*, 144 Wn.2d 869, 877, 31 P.3d 1164, 63 P.3d 764 (2001); 20 AM. JUR. 2D *Costs* § 63 (2015). Stated differently, the doctrine allows an attorney "in equity" to recover fees in the absence of a contract or statute when his services confer a substantial benefit for a group of people. *John P. Lynch, PS v. Deaconess Medical Center*, 113 Wn.2d 162, 167-68, 776 P.2d 681 (1989). When one person creates or preserves a fund from which another then takes, the two should share, pro rata, the fees and costs reasonably incurred to generate the fund. *Winters v. State Farm Mutual Automobile Insurance Co.*, 144 Wn.2d at 877. A person who benefits from a lawsuit without contributing to its expense is unjustly enriched at the successful litigant's expense. 20 AM. JUR. 2D *Costs* § 63 (2015). Common fund fee awards present an exception to the American rule that each litigant pays his or her own attorney for services performed. *Mahler v. Szucs*, 135 Wn.2d 398, 426-27, 957 P.2d 632, 966 P.2d 305 (1998).

Appellate decisions repeatedly proclaim that the law grounds the common fund doctrine in equity, good conscience, and fairness, the requirements for waiver of ESD reimbursement under RCW 50.20.190 and WAC 192-220-030. According to Washington courts, the common fund doctrine generates an "equitable sharing rule." *Hamm v. State Farm Mutual Automobile Insurance Co.*, 151 Wn.2d 303, 310, 88 P.3d 395 (2004); *Mahler v. Szucs*, 135 Wn.2d at 426-27. The doctrine is grounded in equity. *Bowles v. Department of Retirement Systems*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993). The doctrine arises from "equitable principles." *Hamm v. State Farm Mutual Automobile Insurance Co.*, 151 Wn.2d at 311. According to commentators and foreign decisions, the doctrine is calculated to achieve equity. Johnny Parker, *The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation*, 31 IND. L. REV. 313, 323 (1998). The common fund doctrine invokes a court's general equity power "to do equity in a particular situation." *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166, 59 S. Ct. 777, 83 L. Ed. 1184 (1939). The doctrine touches the power of equity in doing justice between a party and the beneficiaries of his litigation. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 575, 739 N.E.2d 1263 (2000). The common fund doctrine requires a beneficiary of the common fund to pay attorney fees "as a matter of fairness." *Butson v. Department of Employment & Training*, 2006 VT 10, 179 Vt. 599, 892 A.2d 255, 257.

Three factors should be present before a court adopts the common fund approach:

14

(1) those benefiting from the litigation should be small in number and easily identifiable, (2) the benefits should be traceable with some accuracy, and (3) the benefits should be capable of being shifted with some exactitude to those benefiting. 20 AM. JUR. 2D *Costs* § 63 (2015). The circumstances of this appeal fit all three factors. Only two parties, Christopher Belling and ESD, benefited from Belling's litigation to gain worker compensation payment. One can readily identify ESD's benefit from the litigation before or after removing thirty percent for attorney fees. Belling can easily shift the benefits of the worker compensation payment by forwarding some of the payment to ESD.

The appeal raises the unusual question of whether the common fund doctrine applies when the liable party or the party whose payment creates the common fund is a state agency and a beneficiary of the fund is another state agency. Government's involvement should not preclude use of the doctrine. In *Bowles v. Department of Retirement Systems*, 121 Wn.2d at 70 (1993), the state high court applied the common fund doctrine when a State obligation created the fund.

Even if the Washington State Employment Security Department and the Washington State Department of Labor & Industries are considered one entity as branches of one state government, the common fund doctrine should apply despite the same entity creating and benefiting from the common fund. The Washington Supreme Court has applied the doctrine in the context of an insurance company which created the common fund and benefited from the common fund. *Hamm v. State Farm Mutual*

15

*Automobile Insurance Co.*, 151 Wn.2d 303 (2004). Unemployment compensation and worker compensation are forms of insurance provided by the same legal entity.

The common fund doctrine has been applied in many types of cases covering a large range of civil litigation. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d at 573 (2000). Whether the doctrine applies in a particular case is not determined by a label, but rather by a proper understanding of the doctrine and its limitations. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d at 573.

The common fund doctrine differs from other theories authorizing the granting of attorney fees. *Bowles v. Department of Retirement Systems*, 121 Wn.2d at 70 (1993). The common fund doctrine does not authorize a party to shift fees to an adversary, but rather authorizes the spread of the fees among those who benefit from the litigation. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d at 572. The award of fees is still borne by the prevailing parties, not the losing party. *Bowles v. Department of Retirement Systems*, 121 Wn.2d at 70. As mentioned later, the *Delagrave* court failed to recognized that the common fund doctrine permits fee sharing, not fee shifting.

In light of this background of the common fund doctrine, I review *Delagrave*'s succinct scrutiny of the common fund doctrine. This court wrote then:

> There is no express provision in the statute that allows ESD to forgive an amount attributable to attorney fees on an overpayment. When the legislature does not act to create such a provision, we may not read one into the statute even if we believe the omission is unintentional. *State ex rel. Ewing v. Reeves*, 15 Wn.2d 75, 85, 129 P.2d 805 (1942); *Dep't of*

16

*Labor & Indus. v. Cook*, 44 Wn.2d 671, 677, 269 P.2d 962 (1954). RCW 50.32.160 provides for payment of attorney fees and costs out of the unemployment compensation administration fund only if a commissioner's decision is reversed. A provision for attorney fees for recovery of overpayment is notably absent from this provision as well as from the overpayment provisions of the statutes. *See* RCW 50.20.085, .190. If the legislature had intended attorney fees to be available in overlapping benefits scenarios like the one here, the logical place to include such a provision would be within these three statutes. Mr. Delagrave correctly notes that there is a provision for fees upon recovery from third parties in the L&I statute (RCW 51.24.060(1)). But that only underscores this point.

Moreover, Washington follows the American rule-attorney fees are not recoverable unless provided for otherwise in contract, statute, or recognized equitable principles. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 514, 910 P.2d 462 (1996). Although Mr. Delagrave correctly notes that the common fund rule is a common law rule of equity, it is susceptible to modification by statute. "If the merits of the litigation fall within a statutory scheme which prohibits the award of attorney fees, or allows such an award under narrow circumstances, a party cannot enlarge those circumstances by reference to the common fund doctrine or other equitable powers of the trial court." *Leischner v. Alldridge*, 114 Wn.2d 753, 757, 790 P.2d 1234 (1990) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 719, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967)). RCW 50.32.160 provides for attorney fees under narrow circumstances. The statute may not be enlarged under the doctrine.

*Delagrave v. Employment Security Department*, 127 Wn. App. at 605-06 (2005).

The *Delagrave* court reasoned that, if a statute lacks an express provision that allows an entity to forgive an amount attributable to attorney fees on an overpayment, the court may not read the provision into the statute even if the court believes the omission is unintentional. The court cites *State ex rel. Ewing v. Reeves*, 15 Wn.2d at 85 (1942) and *Department of Labor & Industries v. Cook*, 44 Wn.2d at 677 (1954) to support this ratiocination. *Ewing* does state that a court may not read into a statute an omission. The

17

*Ewing* decision, however, did not consider an award of attorney fees or the common fund doctrine. *Cook* also cites the proposition that a court cannot insert into a statute a provision that the court imagines the legislature inadvertently skipped. *Cook*, nonetheless, also does not review an award of fees or the common fund doctrine.

The rule, that a court cannot read into a statute a provision that the court believes the legislature mistakenly overlooked, lacks any import in our setting. The legislature in RCW 50.20.190 distinctly declared that a waiver may be awarded on grounds of equity and good conscience. The common fund doctrine quintessentially enforces equity and good conscience.

The *Delagrave* court next relied on RCW 50.32.160, which provides for payment of attorney fees and costs out of the unemployment compensation administration fund only if a commissioner's decision is reversed. The court also noted that the reimbursement and waiver statutes, RCW 50.20.085 and .190, do not mention imposition of any fees on the ESD. Based on these statutes, *Delagrave* deduced that attorney fees may not be removed from a DLI payment. In so ruling, the *Delagrave* court misunderstood the nature of the common fund doctrine. Application of the doctrine would not require payment of fees from the unemployment compensation fund. The common fund doctrine is not a fee shifting rule that requires ESD to pay fees from its own pocket. Rather the doctrine, in consideration of fairness and equity, demands that a portion of the reimbursement to ESD be removed before deposited into the

18

unemployment compensation fund in order to pay for the cost of procuring the reimbursement.

The *Delagrave* court next mentioned that, if the merits of the litigation fall within a statutory scheme which prohibits the award of attorney fees, or allows such an award under narrow circumstances, a party cannot enlarge those circumstances by reference to the common fund doctrine or other equitable powers of the trial court. The court cited *Leischner v. Alldridge*, 114 Wn.2d at 757 (1990) and *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. at 719 (1967) for this imperative. The *Delagrave* court then remarked that RCW 50.32.160 provides for attorney fees under narrow circumstances. Once again, however, the court failed to understand the nature of the common fund doctrine and the import of RCW 50.32.160. The statute addresses instances when ESD must pay fees to the worker. The common fund doctrine is not a fee shifting rule. ESD does not pay any fees to the worker.

The *Delagrave* court's reliance on *Leischner v. Alldridge* and *Fleischmann Distilling Corp. v. Maier Brewing Co.* is also misdirected. The *Leischner* court mentioned the rule stated, but only in dicta. No statutory scheme addressing attorney fees was at issue in *Leischner*. The court rejected application of the common fund doctrine because the plaintiff never created any common fund. The *Leischner* suit involved quieting title to real property. Although *Fleischman Distilling Corp.* mentioned the

19

common fund doctrine, the doctrine was not at issue. The court was asked to award attorney fees against the losing party under the federal Lanham Trade-Mark Act.

Despite my disagreement with *Delagrave v. Employment Security Department*, the decision compels me to ask: if the Washington State Legislature wanted the common fund doctrine to apply when ESD recovers DLI payments from the worker, why would the legislature not expressly reference the doctrine in the language of RCW 50.20.190? Answers readily surface. The legislature may have wished to write in general terms rather than defining and thereby impliedly limiting waiver to discrete circumstances. Since the common fund doctrine intimately intertwines with equity, good conscience, and fairness, one could conclude that the legislature particularly sought to allow waiver based on the common fund doctrine. By referring to equity, good conscience and fairness, the legislature expressly meant, in part, the common fund doctrine. To the contrary and because of the inviting interrelationship between the common fund doctrine and equity, the legislature would have expressly excluded waiver based on the doctrine if the legislature did not want ESD to consider the doctrine.

Only one foreign decision, *Butson v. Department of Employment & Training*, 892 A.2d 255 (VT 2006), addresses the same issue: whether a worker may deduct the cost of collecting worker compensation payments when the worker must reimburse, to the unemployment compensation insurance administration, benefits collected when the worker later recovers payment from a worker compensation insurance administration and

20

the benefits overlap in time. The *Butson* court ruled against the worker, but the reasoning

of the Vermont decision, assuming the reasoning supports either side, bolsters

Christopher Belling's position.

In *Butson v. Department of Employment & Training*, Kenneth Butson received

unemployment compensation benefits from April 20, 2002 through January 4, 2003,

totaling $8,440. He later filed a worker compensation claim and received benefits

covering the period from April 20, 2002 to January 4, 2003, and greater in the amount

than the unemployment compensation benefits earlier garnered. The Vermont

Employment Security Board issued an order demanding that Butson repay the

unemployment compensation fund all monies earlier received. Butson argued that he

should be allowed to deduct from the repayment a share of the attorney fees he incurred

when seeking worker compensation funds. The Board disagreed and Butson appealed.

On appeal to the Vermont Supreme Court, Kenneth Butson argued that a reduced

repayment was authorized by equitable considerations and the common fund doctrine.

The Vermont court disagreed based on its reading of its state statute. The unemployment

compensation statute read:

> Any person who receives remuneration . . . which is allocable in
> whole or in part to prior weeks during which he or she received any
> amounts as benefits under this chapter *shall be liable for all such amounts
> of benefits* or those portions of such amounts equal to the portions of such
> remuneration properly allocable to the weeks in question.

21

21 V.S.A. § 1347(b) (emphasis and alterations in original). The express terms of the statute required a claimant to repay all of the benefits received for the time period duplicated by his worker compensation benefits, without any indication that he may reduce the amount for any purpose. Because of this clear legislative mandate, the court could not permit a deduction pursuant to the common fund doctrine, even for equitable considerations. Of course, the Washington statute, unlike the Vermont statute, allows reduction of the reimbursement to ESD based on equity and good conscience. RCW 50.20.190.

A Washington case consistent with *Butson v. Department of Employment & Training* is *Department of Labor & Industries v. Dillon*, 28 Wn. App. 853, 626 P.2d 1004 (1981). Donald Dillon recovered $11,493.95 in benefits from DLI, under the victims of crime compensation act, as a result of an assault. He later recovered $15,000.00 against his assailant. DLI then demanded full reimbursement of the benefits paid. Dillon's attorney wished payment from some of the settlement proceeds and filed a lien against the recovery from the tortfeasor. DLI sued to recover all amounts paid. Former RCW 7.68.050 (1973) then read:

> No right of action at law for damages incurred as a consequence of a criminal act shall be lost as a consequence of being entitled to benefits under the provisions of this chapter. In the event any person entitled to benefits under this chapter additionally seeks a remedy for damages incurred as a consequence of a criminal act, then and in that event *the department shall be subrogated to the rights of such person and have a lien upon any recovery so made to the extent of the benefits paid* or payable by

22

the department to or on behalf of such person under this chapter.

(Emphasis added.) This court refused to apply the common fund doctrine because of the language of the statute. The court noted the imposition of a lien in favor of DLI on any recovery. Of course, the statute contained no exception for a waiver on equitable grounds. RCW 50.20.190, the unemployment compensation reimbursement statute, contains no lien provision and affords an important exception for circumstances in equity and good conscience, circumstances consistent with the common fund doctrine.

Fairness demands that ESD at least consider the common fund doctrine when the state government generated and profited from the fund created by the worker's effort. DLI wrongfully withheld benefits owed Christopher Belling. ESD did nothing to assist Belling to litigate the wrong. Yet, when Belling prevailed against DLI, ESD immediately demanded payment of much of the recovery. Fairness, equity and good conscience does not sanction an injured worker expending time, energy and money to obtain rightful benefits from the government only to remit most of the benefits back to the government while paying the entire cost of obtaining the benefits. ESD would not have boosted its ledger sheet without the expense incurred by Belling.

Christopher Belling's counsel took his thirty percent share of Belling's worker compensation recovery from the full $48,251.19. Therefore, ESD's payment of a portion of the fees would allow reimbursement to Belling of some of his payment to counsel. I

23

assume and expect that counsel would repay to Belling the portion of the fees deducted from ESD's reimbursement.

ESD contends that the common fund doctrine should not apply, in part, because, even without waiver of some of the overpayment, Christopher Belling remains in the same financial position as without receiving unemployment benefits. According to ESD, Belling would have remained responsible for any attorney fees and costs associated with litigating his worker compensation claim even without earlier receiving unemployment compensation. Compelling reflections, however, deflect this contention. The State of Washington agencies caught Belling in the middle. DLI wrongfully withheld benefits and placed Belling in a position that required him to rely on ESD. Belling may have never pursued DLI payments if he had known ESD would garner almost all of the worker compensation recovery. When considering that DLI deducted $9,271.80 from the award, Belling actually lost by reason of seeking recovery from DLI. ESD's contention ignores the unjustness of it reaping a windfall without paying a fair share of the expenses of that windfall.

My analysis must continue. The ESD reimbursement waiver statute, RCW 50.20.190(2), reads that the ESD "*may waive* an overpayment if the commissioner finds . . . that the recovery thereof would be against equity and good conscience." (Emphasis added.) The word "may" connotes discretion. A court construes "may" as permissive. *In re Parentage of K.R.P.*, 160 Wn. App. 215, 223, 247 P.3d 491 (2011). Generally, the

24

court has no discretion in determining whether to apply the common fund doctrine. Either it applies or does not apply. Granting ESD discretion to apply the common fund doctrine presents the same conundrum raised in the first section of this dissent: what, if any, guidelines or considerations should ESD follow when exercising its discretion in determining waiver based on fees incurred by the worker.

One abuses its discretion if it relies on unsupported facts, applies the wrong legal standard, or adopts a position no reasonable person would take. *State v. Lord*, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007). Thus, discretion has limits and must be reasonably applied. It is wrong to apply discretion contrary to the law.

Under a correct reading of RCW 50.20.190, ESD must exercise some discretion in applying the common fund doctrine. ESD cannot just dismiss the doctrine. As the *Delagrave* court directed ESD to consider fees incurred by the worker when ESD exercises equity and good conscience when resolving waiver, ESD must consider whether the common fund doctrine should lead to waiver of the reimbursement requirement. When the worker asserts the common fund doctrine, the department should address the contention and declare whether it applies the doctrine. In doing so, ESD should apply fairness under the circumstances and explain the reason for applying or not applying the theory. Because of the compelling connection between the common fund doctrine, on the one hand, and equity, good conscience and fairness, on the one hand, I would hope that ESD would almost always allow waiver. Nevertheless, because of

25

discretion afforded ESD, I would expect some circumstances may not call for application of the common fund doctrine.

Since this appeal is from an administrative hearing, the court should remand for ESD to exercise its discretion. During the remand, the parties could present input on how the discretion should be exercised. If need be, this court could address this exercise at a later date.

I DISSENT:

_Fearing, J._

Fearing, C.J.